[Civ. No. 80.    Third Appellate District.—November 27, 1905.]

## JOHN SANGUINETTI, Appellant, v. ANTONIA PELLI-GRINI, Administratrix of Estate of LOUIS T. BANCHE, Deceased, Respondent.

ACTION ON REJECTED CLAIM—EVIDENCE—LETTER OF PLAINTIFF TO THIRD PERSON—DISCREDIT OF CLAIM.—In an action on a rejected claim against the estate of a decedent, a letter of plaintiff to third persons bearing directly upon the transaction in controversy, and showing other unpaid claims in his favor against the estate amounting to a larger sum, was properly admitted in evidence, as tending to discredit plaintiff's claim.

ID.—OTHER ITEMS—HARMLESS EXCLUSION OF EVIDENCE.—The exclusion of evidence as to other items was harmless, where the plaintiff was immediately permitted to give evidence in relation thereto without objection.

ID.—HARMLESS REFUSAL TO STRIKE OUT HEARSAY — POSITIVE TESTIMONY.—The refusal of the court to strike out hearsay evidence was harmless, where another witness had given positive testimony to the same fact.

ID.—PAYMENT—BURDEN OF PROOF—SUPPORT OF FINDING.—Where the defendant pleaded payment, the burden was upon him to establish the plea; but, *held,* upon a review of the evidence, that a finding that the claim sued upon was paid by the deceased prior to his death was sufficiently supported.

ID.—FINDING AS TO USURY LAW OF PLACE OF CONTRACT NOT REQUIRED.—In view of the finding as to payment of the debt sued upon, an omission to find upon a plea of usury under the law of the place of contract is immaterial.

APPEAL from a judgment of the Superior Court of San Joaquin County.    F. H. Smith, Judge.

The facts are stated in the opinion of the court.

Miller & Clark, for Appellant.

A. H. Ashley, and J. Frank Brown, for Respondent.

BUCKLES, J.—This is an action against the administratrix to recover the amount claimed to be due upon the following instruments set out in a claim presented to the administratrix and rejected, to wit:

"Hunker Creek, November 16, 1900.

"No. 10 Above.

."I, Thomas Banche, received this 16th day of November, A. D. 1900, the sum of $300 hundred dollars from John Sanguinetti of this place, as a loan, for the purchase of a rooming house on Third St., and between Second and Third avenue, in the city of Dawson, Y. T., called Gandolpos House, at five per cent a month.

"LOUIS THOMAS BANCHE, Debtor.

"Vitnes:  L. PODESTA."

"Hunker Creek, December 11, 1900.

"I, L. Thomas Banche, have this day received $152.80 in gold-dust, as a loan, from John Sanguinetti, to be paid in 6 months, at five per cent. a month interest.

"L. THOMAS BANCHE, of Dawson, Y. T.

"Weitness:  L. PODESTA."

These two instruments were made into a claim, presented to the administratrix in due time, and the claim was rejected. The two instruments amounted to $452.80 and the interest claimed thereon, $636.84, making a total claim of $1,089.64. The answer alleges payment. The court found nothing due, and judgment was rendered for defendant.

The appeal is from the judgment. The said Louis Banche died intestate on February 14, 1902, at Dawson City, Yukon Territory, and Antonia Pelligrini was duly appointed administratrix by the superior court of San Joaquin county, California, qualified, gave notice to creditors, and plaintiff presented his said claim and the same was rejected as aforesaid. The plaintiff was a witness, and testified that when Banche died he owed him the $300 represented in exhibit 1 and the $152.80 represented in exhibit 2. After Banche's death plaintiff made out a typewritten statement that Banche owed him $700 and sent it to Cooper Bros., at Dawson, and upon inquiry from the Cooper Bros. as to the claim that Banche owed plaintiff $700, plaintiff sent the following letter to explain the matter:

"Stockton, Cal., May 11th, 1902.

"Mess. Cooper Bros., Dawson.

"Gentlemen:  In regard to the $700.00 I loaned to Thomas Banche, which you do not understand, will state that at one

time I gave him $300.00 and at another $200.00 when he went into the lodging house business, for which I hold notes. And I paid to Mrs. George Cooper, of San Francisco, $100.00, and Tom collected from Jack Collins $100.00, which was due me.

"I remain, yours truly,

"JOHN SANGUINETTI."

This letter was introduced in evidence by defendant over the objection of plaintiff. It bore directly upon the transaction about which the court was then inquiring, and was properly admitted as evidence tending to discredit plaintiff's claim. It will be observed that he was trying to explain his claim that Banche owed him $700, and that the $300, the $200, and the $100 he says he paid Mrs. Cooper, and the $100 Banche had collected from Collins, just make the $700 he claims Banche owed him. It appears from other witnesses in the case that plaintiff had received the $100 Banche collected from Collins for him, and that he asked Collins to pay it again. Cooper paid Banche the $100, to be given plaintiff to carry to Cooper's wife in Stockton. There is no legal evidence, however, to show that Banche ever paid it over to plaintiff. However, the claims for the $100 collected from Collins and the $100 paid to Cooper's wife were abandoned by plaintiff, when he presented his claims against the estate of Banche, and it must therefore be presumed that Banche did not owe him these two amounts. The witness Luigi Podesto, who signed both instruments on which this claim is based, came to Dawson City with plaintiff in 1898, and they worked together in the mines and were partners, says: Plaintiff gave Banche the $300 mentioned in plaintiff's exhibit 1, in his presence, and Banche wrote the paper and signed it and gave it to plaintiff. He signed as a witness, but does not remember at whose request. That Banche said he wanted the money to start a lodging-house. The money was in gold-dust, and all that was said by either about interest was when Banche read over the note to Sanguinetti before he signed it, and said that he put in the note that he was to pay five per cent per month interest. This witness says that this exhibit was delivered when the $300 was, and that it was November 16, 1900. The same thing was repeated in relation to the $152.80, with the exception that the witness did not see plaintiff deliver to Banche any gold-dust at that time, but

saw Banche give the paper to plaintiff, and that it was signed and executed December 11, 1900. He did not know anything about the interest, or whether Banche promised to deliver back to plaintiff gold-dust or money. On cross-examination Podesto said he had received a letter from plaintiff about a month before his deposition was taken. He did not know whether Banche had repaid plaintiff the $152.80 just before plaintiff had left Dawson or not, but did not think he had; finally was sure that he had not paid it. He said he and plaintiff loaned Banche and a man by the name of Cooper $500 to get "grub" with to work the American Gulch property, that this was in October, 1900, and that this $500 had been repaid, and payment is contradicted by other witnesses.

The plaintiff was asked on redirect examination this question: "Mr. Miller: What items of indebtedness did Banche owe you, outside of the items set out in your claim against the estate, at the time he died? Mr. Ashley: We object to that, unless it be limited to after the death, not being redirect examination and within the inhibition of section 1880 of the Code of Civil Procedure. The Court: Objection sustained to question in its present form. Mr. Miller: We except." We think there is no reversible error in this ruling, inasmuch as plaintiff was immediately permitted to give evidence to show of what the item of $200 was composed, as follows: The following question was then asked plaintiff, to which there was no objection: "What is that amount of $200 set out in Defendant's Exhibit A, composed of—what items make up the amount of $200 as set out there?" The answer was that the $152.80 was a part of that $200 in Exhibit A, and that "I gave him gold-dust to make up the $200; I gave him four ounces at one time and three ounces at another to make up the balance of $200." Plaintiff further testified that the said gold-dust was worth from $15.40 to $16 an ounce. No objection was made to these questions. This evidence surely had a tendency to impeach the plaintiff's evidence. The difference between $200 and the $152.80 is $47.20, while seven ounces of gold-dust, at the lowest price stated by plaintiff, would be worth $107.80, which latter sum, added to the $152.80, would make the sum of $260.60, instead of $200. Evidently, when plaintiff stated he had given Banche seven ounces of gold-dust to make up the balance of the $200, he

did not consider what the seven ounces would amount to. This discrepancy is important, in view of other differences in other parts of the testimony in the case which tend to impeach the plaintiff. After the plaintiff had heard of the death of Banche he visited and talked with the witness Dominico Bertotti at Stockton, who says the plaintiff asked him if Banche had any property, and when he asked plaintiff, "What do you ask me for?" plaintiff replied: "Because he tell me that he wanted to put a little stand close to the lodging-house he had, and he said he didn't have no money; he asked me for money; I didn't have no money. I had some gold-dust for $86 and a few cents. Now I am ashamed to ask the old lady." The plaintiff denied having mentioned $86 to Bertotti.

Antonia Pelligrini testified that in March, 1902, the plaintiff called upon her at her home in Sacramento, and said to her: "Tom had bad luck there. He was a good boy. Toward the last one day he asked me if I could lend him some money. He said he had no money. I had some gold chunks or gold-dust. I told him I would let him have that gold-dust. I took it out of the sack and weighed it in the store. Tom had a little store in front of a lodging-house, and we weighed it in the store there, and it amounted to $86.70; that was all the money and gold-dust I had in my possession at that time. He said nothing about Banche owing him any other money or amount, and then, when he had said this, he said, 'But that's all right.'" Mrs. Banche, the mother of said deceased, also testified to the same statement, and was present when plaintiff called on Antonia Pelligrini. James Cooper, who was mining in American Gulch, twenty-five miles from Dawson, one of the party for whom Banche borrowed the $300 from plaintiff, and the $200 from plaintiff's partner, the witness Luigi Podesto, testified to the payment of the said sum of $300 and $200, and after Cooper had received the typewritten statement from plaintiff showing Banche to be indebted to him in the sum of $700, he says plaintiff was in Dawson and met James and George Cooper, when the Coopers interrogated him about all the items of his statement. This witness says: "We asked him all about the items of his typewritten statement and all he could account for was the item of $152.80. He merely said Banche had borrowed it one time and another, but he

could not tell us for what he had borrowed it. . . . The
$152.80 was borrowed for the lodging-house and paid when
Sanguinetti went outside. . . . I told Banche in the presence
of Sanguinetti he could turn over the $150 of the gold-dust
he was holding for me and my brother to Sanguinetti to pay
that $152.80, which I am sure he did.'' As to the loan of $300
to Banche by Sanguinetti, the witness said he was not present,
but that he knew Banche went to Sanguinetti to borrow it and
came back with the money and said he had borrowed it from
Sanguinetti.

Defendant moved to strike out all the testimony of witness
relating to the indebtedness of the $300 on the ground that
it was hearsay. The motion was denied. The witness only
knew from what Banche did and said that the money was
borrowed from Sanguinetti, and the evidence was therefore
hearsay. But it had already appeared in the case from the
testimony of the witness Podesto that Banche had borrowed
$300 of Sanguinetti for the Cooper boys, and that the same
had been paid. There was, therefore, no harm to plaintiff
in the court refusing to strike out. The witness then testified,
further, as to what Banche had told him: ''He told me he
had got a receipt for it. He told me he gave such a memo-
randa to Sanguinetti. Banche told me he had borrowed from
Sanguinetti $152.80, and he borrowed from my brother George
and I $150 to pay it back.'' The witness further testified that
plaintiff never told him after Banche's death that Banche
owed him anything. There was no objection made to this
testimony. The witness George Cooper testified that he was
familiar with the business transactions of Banche and San-
guinetti about loaning certain money in the winter of 1900,
and said: ''Yes, I know of the loan of $300 which Banche
borrowed from Sanguinetti to work a lay on American Gulch,
and another loan of $152.80 with which to purchase a rooming-
house in Dawson. I know of no other loans, and don't believe
there were others. Banche was working a lay on American
Gulch with me and my partners, and I know he borrowed
$300 from Sanguinetti to work a lay with us; and that he
afterward borrowed about $150 from Sanguinetti to buy a
rooming-house in Dawson. Banche told me this, and so did
Sanguinetti. . . . Banche told me he gave receipts for these
amounts, but I never saw anything in writing concerning

them. Banche borrowed $200 from Luigi Podesto at the time he borrowed the $300 from Sanguinetti to work a lay on American Gulch. Banche stated that he gave him a receipt for the same. My brother and I gave Banche $500 on May 23, 1901, with which to pay Sanguinetti and Podesto, . . . and both Sanguinetti and Podesto acknowledged to me personally that they received the money. . . . I know the written memoranda of these loans were not returned to Banche because Sanguinetti said he left them on Hunker Creek, and Banche told me he guessed it was all right, as he had known the boys so long that he didn't think it made any difference whether he got his receipts or not." The witness further testified that, when plaintiff returned to Dawson in June, 1902, he questioned him about his claim of $700 against Banche, asking him if Banche had borrowed that much and what it was for, and plaintiff could not explain, and the only account he could give was that he had let Banche have $152.80 for his lodging-house.

From this evidence the court had to determine the question involved. There are some sharp conflicts in minor parts of the evidence. The testimony of Podesto, the plaintiff's partner, would seem to be sufficient to establish the plaintiff's claim, if true. But the facts that the Coopers, who were mining with Banche before he went to Dawson to take charge of the rooming-house, knew nothing of this claim of plaintiff, that, when asked about the $300 in the claim, plaintiff could not explain it or tell when, where, or for what it was loaned to Banche, may have indicated to the court that Podesto was testifying solely with reference to the $300 Sanguinetti loaned Banche to enable him and the Cooper Bros. to work their mine in American Gulch, and was confused as to Banche wanting this $300 for the lodging-house. The testimony of Podesto was by deposition, and appears to have been on interrogatories. He testified he could read English, but could not write it, and yet says he signed his name as a witness to both instruments. His particularity as to the rate of interest, and how it came to be placed in the $300 note, may of itself seem as though the witness had been posted to answer in that way. We think that, to bring all the testimony in the case together, there is sufficient to have shown the court below that Podesto's evidence was not true. Then the testimony of plaintiff in

reference to the $152.80, and the letter written to the Cooper boys, when analyzed, would hardly be sufficient to support his claim; besides, it is shown that Cooper gave Banche the money, or gold-dust, with which to pay that item, though Cooper did not see Banche pay it over to plaintiff, but it might be fairly presumed he did, because Cooper directed him to do so, in the presence of plaintiff, out of the gold-dust the Cooper boys had left with Banche to be exchanged into currency, and because Banche did pay over to plaintiff, at that time, the $100 left with him to be taken to Cooper's wife, and the $100 that Banche had collected for plaintiff from Collins. The fact that plaintiff told defendant and Banche's mother, and also the witness Bertotti, that Banche owed him $86.70 at the time of his death, would indicate that he owed no more, and that the claim presented to the administrattix was false and an after consideration. The exhibits 1 and 2 were not taken up when payment was made, as the Cooper boys stated, because they were not present, and Banche did not think it necessary. They were mentioned. We have set out so much of the evidence because it was deemed necessary in order that it may be seen that the evidence supports the court's findings that all the indebtedness of Banche to plaintiff, as set forth in the claim sued on, had been fully paid and discharged prior to Banche's death.

At the close of the testimony defendant asked to file amendments to the answer, and was permitted over the objections of plaintiff. Those amendments contained a copy of the act of the Canadian parliament passed June 29, 1897, providing that when "any interest is made payable at a rate or percentage per day, week, month or any rate or percentage for any period less than a year, no interest exceeding the rate or percentage of six per cent per annum shall be chargeable." There was no finding upon this, and, as the court found the debt had been fully paid and nothing was due, a finding upon this was unnecessary. The complaint alleging a debt due, and the answer alleging payment, if the plaintiff proves that the debt was contracted, the burden of proving payment is upon the defendant. (*Stuart* v. *Lord,* 138 Cal. 672, [72 Pac. 142].) The plaintiff was permitted to testify as to some matters connected with the $152.80 claim, but to which no objection was made on the ground that he could not testify under

the provisions of section 1880 of the Code of Civil Procedure. But we think that the evidence supports the findings that payment had been made.

The judgment is affirmed.

Chipman, P. J., and McLaughlin, J., concurred.