[Civ. No. 5317. Third Appellate District.—January 23, 1936.]

MAMIE SAYLES, Respondent, v. L. H. PETERS et al., Defendants; A. M. PETERS, Appellant.

[Civ. No. 5318. Third Appellate District.—January 23, 1936.]

MAMIE SAYLES et al., Respondents, v. L. H. PETERS et al., Defendants; A. M. PETERS, Appellant.

Gerald M. Desmond and Stanley W. Reckers for Appellants.

Ralph H. Lewis, Wilson Craven and Charles J. Hasman for Respondents.

PLUMMER, J.—The above actions being founded upon the same circumstances, were consolidated and tried as one, and are here presented upon one transcript and one set of briefs. The plaintiffs in both cases had judgments, from which judgments the defendant A. M. Peters appeals.

Prior to the 3d day of December, 1933, L. H. Peters and A. M. Peters were husband and wife, and residents of Carson City, Nevada. On the 3d day of December, 1933, L. H. Peters died as a result of the automobile collision hereinafter referred to. The facts set out in the transcript, and as found by the trial court, are as follows:

That an automobile driven by Chester Sayles, the husband of Mamie Sayles, and father of James C. Sayles, Melvin H. Sayles and Thelma R. Williams, collided with an automobile driven by L. H. Peters, the husband of the defendant, A. M. Peters. The collision occurred a short distance from the city of Sacramento, on the evening of November 24, 1933. The plaintiff Mamie Sayles was riding with her husband Chester Sayles at the time of the collision. In the car with L. H. Peters was one Henry Greer. As a result of injuries received in the collision, Chester Sayles died shortly thereafter. On the 3d day of December, 1933, as we have stated, as a result of the injuries received in the collision, L. H. Peters died. The defendant A. M. Peters, at the time of the collision, was at her home in Carson City, Nevada. The car driven by L. H. Peters was registered in the name of A. M. Peters by the motor vehicle department of the state of Nevada; likewise, was insured in her name. The car was purchased after the marriage of L. H. Peters and A. M. Peters, and apparently was paid for out of the proceeds of an insurance business conducted by L. H. Peters.

The action was prosecuted under the provisions of section 1714¼ of the Civil Code, based upon the allegation that the said A. M. Peters was the sole owner of the automobile driven by L. H. Peters, and that it was being driven with her permission. The court found A. M. Peters to be the owner of the automobile, and gave judgment upon evidence showing that L. H. Peters was solely responsible for the collision.

Upon this appeal it is contended by appellants that the cause of action against A. M. Peters was barred by the death of L. H. Peters; also, that the evidence shows that the automobile was community property of L. H. Peters and A. M. Peters, and that the testimony is not sufficient to justify the finding of the court that the automobile was the sole and separate property of A. M. Peters.

The actions were begun a few days before the death of L. H. Peters, but the record shows it was impossible to make service of summons upon L. H. Peters.

Being actions for tort, the law seems to be well settled that so far as L. H. Peters was concerned, the actions died with his demise. In support of this statement we need only refer to the case of *Singley* v. *Bigelow,* 108 Cal. App. 436 [291 Pac. 899], and the cases there cited. That case, however, and the cases there cited, do not determine the question as to the liability of A. M. Peters.

Section 1714¼ of the Civil Code first provides that every owner of a motor vehicle shall be liable and responsible for the death of, or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. The section then contains a limitation as to the amount of damages for which an owner may be liable. Following this limitation the section next specifies that the operator of the vehicle shall be made a ''party-defendant, provided personal service of process can be had upon said operator within this state, and upon recovery of judgment, recourse shall first be had against the property of said operator so served''. The section then provides that the owner shall have the right of subrogation, and also contains provision in regard to the settlement of claims. The section itself from which we have quoted specifically provides that

the operator of the car is to be made a defendant when personal service can be had upon him within this state, which excludes the idea that the owner is relieved from liability on account of the fact that personal service upon the operator cannot be had.

In the instant case the record shows personal service could not be had upon L. H. Peters. The action was begun on the day preceding his death. Following the death of L. H. Peters the requirement of personal service, of course, falls to the ground just the same as though he were without the state. In other words, personal service upon L. H. Peters within this state is shown to have been impossible by reason of his death.

The statute having made personal service upon the operator of the motor vehicle contingent upon the possibility of service, the conclusion necessarily follows that the liability of the owner is not dependent upon the possibility of personal service upon the operator of the car. It would seem that this question has been settled by the decisions in this state.

In *Milburn* v. *Foster*, 8 Cal. App. (2d) 478 [47 Pac. (2d) 1106], we find the following: "The liability of the defendant J. Arthur Foster is based upon section 1714¼ of the Civil Code. This liability is joint and several (*Pascoe* v. *Payne*, 124 Cal. App. 528, 531 [12 Pac. (2d) 1091]; *Broome* v. *Kern Valley Packing Co.*, 6 Cal. App. (2d) 256 [44 Pac. (2d) 430], hearing by the Supreme Court denied), except that the liability in so far as defendant owner is concerned, being created by statute, is limited to the amount fixed by statute. In cases which predicate liability of an owner defendant under this section when ownership of the automobile and permission to operate the same has been proved, the owner becomes directly liable for damage suffered in an amount limited by the statute, and this liability is direct and several, as well as joint, and is not dependent upon a judgment against the operator."

In *Broome* v. *Kern Valley Packing Co.*, 6 Cal. App. (2d) 256 [44 Pac. (2d) 430], a similar question was before the court, and it was there held (quoting from the syllabus): "Statutory liability of owner of automobile for injury resulting from negligence to person operating automobile with owner's permission, may be secondary as between owner and

such operator, but owner's liability is primary as between owner and party injured through operator's negligence, especially since statute provides that operator of automobile need not be made a defendant in all cases.'' A reading of the statute we think is sufficient to show that the contention of the appellants is not well taken, and that the cases we have cited are decisive of the question.

The next question is in regard to the sufficiency of the testimony to justify the finding of the trial court that the appellant A. M. Peters was the sole owner of the automobile at the time of the collision.

In addition to what we have stated, the testimony shows that the bill of sale made out by the seller of the automobile purported to transfer the title to the appellant in this action; that the automobile was registered in her name as legal owner thereof; that it was subsequently insured in her name, as the owner thereof; that after the collision to which we have referred the appellant, as the owner, collected the insurance thereon.

While the testimony of the appellant set out in the record is to the effect that the car was purchased with money earned in the business conducted by L. H. Peters, deceased, and taxes paid by him thereon, the following is also found in the record: ''Q. Why was this car when it was purchased placed in your name, Mrs. Peters? A. In the year 1932, in May, a friend of my husband fell down the cellar steps and was killed and his property was not turned over in his wife's name. It was not left in his wife's name and it worried Mr. Peters and he put all the property over in my name so in case anything happened to him why I would be protected. Q. After the property was put in your name did Mr. Peters continue to sell insurance? A. Yes, he did. Q. Did he continue to handle this money, the money that was received in the insurance business? A. Yes, he did. He always handled the money. Q. Did he continue to pay taxes on the real property? A. Yes, he did. Q. Did he continue to make these monthly payments of $40.00 on the automobile? A. Yes, he did. Recross-examination by Ralph H. Lewis, Esq., of counsel on behalf of plaintiffs herein: Q. Mrs. Peters, Mr. Peters turned the car over to you, transferred it to you, and transferred the real property and everything so it would be your property when he died, isn't

that true? A. Yes. Q. And in other words, he made what the lawyers call a gift of his property to you but he still retained the right to use it during his lifetime, isn't that right? Mr. Desmond. That is objected to upon the ground it calls for the conclusion and opinion of the witness. The Court. Yes, I think the objection to that is good. Mr. Lewis. Q. Mr. Peters told you at that time he made these separate transfers of the property that he was turning this over to you so that the title of the property would be in you and you would not have to probate the estate in case he died? A. Yes. Q. That was the whole purpose of it? A. Yes. Mr. Lewis. That is all."

According to the laws of Nevada, all property owned by the wife acquired by her before marriage or afterwards, by gift, bequest, devise or descent, with the rents, issues and profits thereof, constitute her separate property. The statutes of Nevada also provide: "All other property acquired after marriage by either husband or wife, or both, with certain exceptions, is community property." The laws of Nevada also provide that property acquired after marriage by husband and wife, or either, is presumed to be community property, and that it can only be shown to be separate property by clear and satisfactory testimony. Based upon these references to the laws of Nevada, it is contended by the appellant that the automobile involved was community property and that L. H. Peters was operating the same as an owner thereof, being entitled to its exclusive use and control. In support of this contention appellant cites the case of *Milisich* v. *Hillhouse*, 48 Nev. 166 [228 Pac. 307], being a case where the question as to the ownership of an automobile alleged to be separate and community property was involved. On the part of the sheriff it was alleged to be community property; on the part of the plaintiff it was alleged to be separate property. A reading of that case shows that the circumstances there involved are readily distinguishable from the circumstances presented for our consideration. In the Hillhouse case the automobile was registered in the name of the husband as the owner, and the court in that case held, notwithstanding the testimony of the plaintiff, that the car was given to her, the circumstances relating to the registration, insurance, etc., sufficient to justify the trial court in concluding that the automobile was community property, and therefore, liable for

the husband's indebtedness. In the instant case the bill of sale for the automobile purported to transfer the title to the appellant. The registration was in her name as the owner thereof, and the insurance appears to have been in her name as the owner thereof; that she collected the insurance; that under the testimony which we have set forth herein, title not only to the personal property but to certain real estate was transferred to the appellant so that she could escape probate proceedings. The appellant acted in pursuance of the arrangement made by the husband, transferring title to her as the owner thereof. Upon the trial court devolved the duty of weighing the effect of her words as against the effect of her acts, in determining the ownership of the automobile.

A considerable portion of the briefs is devoted to the question as to whether the court followed the presumption that property acquired after marriage was community property unless shown by satisfactory evidence to be separate property under the laws of the state of Nevada, or followed the presumption of section 164 of our Civil Code. We find nothing in the record indicating that the court gave precedence to either presumption. We may state that the laws of Nevada are the same as in this state requiring every owner of a motor vehicle to have the same registered with the motor vehicle department of the state, and it is made the duty of the officers to examine into the regularity and genuineness of the application for registration ''in order that every certificate issued for a vehicle shall contain true statements of the ownership thereof''.

Irrespective of the law which relates to what is called the *lex loci* and the *lex fori,* if the testimony introduced was sufficient to justify the trial court in coming to the conclusion that the appellant A. M. Peters was satisfactorily shown to be the owner of the automobile, it would fulfill the requirements both of the laws of the state of Nevada and of the state of California.

In 78 A. L. R., page 884, we find the following general statement: ''Generally, questions of evidence as, for instance, its admissibility, sufficiency, etc., are regarded as purely questions of remedy to be governed by the law of the forum, and the question of presumption and burden of proof is, at least by the weight of authority, ordinarily regarded as subject to the same rule.'' We do not need to quote further, but this

statement is supported by a long list of authorities. Thus, if under our law the testimony is sufficient to support the finding of the trial court, the judgment should be affirmed.

In the case of *Hammond* v. *Hazard,* 40 Cal. App. 45 [180 Pac. 46], we find the following (quoting from the syllabus): "The Motor Vehicle Act (Stats. 1913, page 641, secs. 3 and 4), requiring the owner of every automobile to cause an application for registration to be filed in the name of the owner, warrants the finding that the person in whose name an automobile is registered is in fact the rightful owner." In support of this statement the court there cites *Commonwealth* v. *Sherman,* 191 Mass. 439 [78 N. E. 98]; *Ferris* v. *Sterling,* 214 N. Y. 249 [108 N. E. 406, Ann. Cas. 1916D, 1161], and note on page 1163.

The same question was before the court in the case of *De Puy* v. *Shay,* 127 Cal. App. 476 [16 Pac. (2d) 158].

In the *Estate of Nelson,* 104 Cal. App. 613 [286 Pac. 439], this court, speaking through Justice Thompson, said: "If a conveyance of real property is made from a third party to the wife, with the husband's knowledge and consent, the property is deemed to be her separate property" (citing a number of authorities). Then following: "The intention must be inferred from the surrounding circumstances, declarations and conduct of the parties at the time of the transfer" (citing a number of authorities). And, further: "Where a conveyance is made from a third person to the wife, with the knowledge of the husband, regardless of whether it is paid for from the community funds or from his separate funds, in the absence of fraud or undue influence it will be presumed to have been intended as a gift." This language appears to have been used in relation to transfers of title to real estate. However, we do not perceive any distinction in principle between a transfer to real estate and a transfer to personal property where the title is taken in the name of the wife, the law requiring that the application for registration shall be made by the owner, insurance taken out by the one whose name appears upon the registration to be the owner, and the insurance collected by such person, the finding of the trial court as to the ownership of the person so acting would seem to be well supported.

To the same effect is the case of *Perry* v. *A. Paladini, Inc.,* 89 Cal. App. 275 [264 Pac. 580].

Other cases might be cited, but what we have said we think sufficient to show that the appellant's contentions are not well founded, and that the testimony in the record, and the acts of the appellant thereby shown to have taken place, amply support the findings of the trial court. No other grounds for reversal are assigned.

The judgments are affirmed.

Thompson, J., and Pullen, P. J., concurred.