[Civ. No. 12400. First Dist., Div. One. June 10, 1943.]

D. F. MORRIS et al., Respondents, v. W. J. FORTIER et al., Appellants.

C. Ray Robinson, Willard B. Treadwell, Robert H. Walker and Loraine B. Rogers for Appellants.

F. M. Ostrander for Respondents.

PETERS, P. J.—Defendants appeal from a judgment awarding plaintiffs $10,187.93 for the death of their son, Louis Morris. The jury verdict was for $15,000 plus funeral expenses in an amount not fixed in the verdict but admitted

at the trial to be $187.93. As a condition to denying the motion for a new trial the trial court required that plaintiffs remit $4,812.07. The remission was filed, the motion for new trial denied, and judgment entered in the amount above indicated.

The son, Louis Morris, was killed in a highway collision between a Ford truck in which he was riding and which his brother, Henry Morris, was driving, and a Diesel truck-tractor, with two large trailers attached, owned by defendants and being operated by their employee Lester Wilcox. Henry Morris was also killed in the accident, as was Lester Wilcox, the driver of the truck-tractor. At the time of the accident the Morris boys were employed by one Salter, owner of the Ford truck. Admittedly, Lester Wilcox was acting in the course of his employment with defendants, and they are sued as his employers.

The present action for the death of Louis was consolidated for trial with another action brought by the plaintiff father to recover for the death of Henry. In that action the jury returned a verdict for defendants. No appeal has been taken from the judgment entered on that verdict, and it has become final. It is quite clear from the jury's verdicts in the consolidated cases that the jury impliedly found that both Wilcox, the driver of the truck-tractor, and Henry Morris, the driver of the Ford truck, were guilty of negligence proximately contributing to the accident, but that Louis Morris, passenger with Henry, was free from fault. In a third action, separately tried, brought by the heirs of Wilcox against Salter, the employer of the Morris boys, the plaintiffs therein recovered a substantial judgment based on a jury verdict. In that action the jury must have found that Henry Morris was guilty of negligence and that Wilcox was free from fault. That judgment has become final without an appeal.

On the present appeal one of the major contentions of appellants is, that the judgment in the action brought by the heirs of Wilcox, although between different parties, is *res judicata* in this action on the issue of Wilcox' freedom from negligence proximately contributing to the accident. Appellants further contend that the evidence introduced upon the present trial is insufficient, as a matter of law, to support a judgment for respondents.

 The contention that the judgment in the action brought by the Wilcox heirs against Salter is *res judicata* in

this action is without merit for the reason that there does not exist the requisite identity of parties. This is demonstrated by the following summary:

*Persons involved*:

Henry Morris, driver of Ford truck, and employed by Salter.

Louis Morris, passenger in Ford truck, and employed by Salter.

Lester Wilcox, driver of truck-tractor, and employed by Fortier et al.

*Actions involved*:

1. *Heirs of Wilcox v. Salter*—in this action it was impliedly found that Wilcox was free from negligence, and that Henry Morris was guilty of negligence proximately causing the accident.

2. *Father and mother of Louis Morris v. Fortier*—in this action it was impliedly found that Wilcox was guilty of negligence proximately causing the accident; that the negligence, if any, of Henry Morris did not bar an action for the death of Louis, and that Louis, a passenger in the Ford truck was not guilty of contributory negligence.

It is apparent that the judgment in action No. 1 is inconsistent with the judgment in action No. 2, inasmuch as in No. 1 Wilcox was found not to have been negligent, while in No. 2 he was found to have been guilty of negligence. The Heirs of Wilcox v. Salter action was filed December 13, 1940, and judgment in favor of the Wilcox heirs rendered April 7, 1941. The present action was filed December 27, 1940, and the answer thereto on February 21, 1941. In December, 1941, appellants moved to file a supplemental answer setting up the defense of res judicata, which motion was denied on December 11th. The motion was renewed at the conclusion of the trial and again denied.

In an attempt to sustain their contention that the doctrine of res judicata is here applicable, appellants refer to the cases which hold that where an agent is found not to have been negligent in an action brought against him by the injured third party, that judgment is conclusive in favor of the principal when sued by the third party for the agent's negligence. (*Bradley* v. *Rosenthal*, 154 Cal. 420 [97 P. 875, 129 Am. St.Rep. 171]; *Triano* v. *F. E. Booth & Co., Inc.*, 120 Cal.App.

345 [8 P.2d 174]; *C. H. Duell, Inc.* v. *Metro-Goldwyn Mayer Corp.*, 128 Cal.App. 376 [17 P.2d 781].) However, if the judgment in the Third Party v. Agent action goes against the agent, in the action of Third Party v. Principal the latter is not bound thereby but may relitigate the question of the agent's negligence. (1 Freeman on Judgments (5th ed.), §469, p. 1029.) The reason why the judgment in the Third Party v. Agent action, when adverse to the Third Party, is conclusive in the Third Party v. Principal action is that the tort feasor is the agent and the principal's liability is derivative and the Third Party has had his day in court in the first action on the question of the agent's negligence. But when, in the first action, the agent is found to be negligent, that finding is not conclusive against the principal because he has not had his day in court on that issue. In the present case, in action No. 1 brought by the Wilcox heirs against Salter, it was found that Wilcox was free from negligence. But that adjudication cannot be held binding against the father and mother of Louis Morris in the action against the employer of Wilcox, for the obvious reason that the father and mother of Louis Morris have never had their day in court on the issue of Wilcox' negligence. The father and mother of Louis Morris were neither parties nor in legal privity with the parties to the first action. (§§1908 and 1910, Code Civ. Proc.; *Hansberry* v. *Lee*, 311 U.S. 32 [61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741]; *Drummond* v. *Drummond*, 39 Cal.App.2d 418 [103 P.2d 217].) They were in no legal position to appeal from the first judgment, not being parties thereto.

Appellants cite *Southern Pacific Co.* v. *City of Los Angeles*, 5 Cal.2d 545 [55 P.2d 847]. That case, and the companion case of *Inyo Chemical Co.* v. *City of Los Angeles*, 5 Cal.2d 525 [55 P.2d 850], have nothing to do with the doctrine of res judicata. They involved a situation where the city of Los Angeles was sued in two separate actions by two separate plaintiffs for damages resulting from the breaking of a municipal aqueduct alleged to have been caused by the negligence of the city. In the Southern Pacific Company case the trial court found that the city was not negligent, and that the breaking was caused by an unforeseeable act of God. In the Inyo Chemical Company case a different trial judge, on substantially the same evidence, found that the negligence of the city was the sole proximate cause of the accident. Both cases were appealed,

and both were before the Supreme Court at the same time. The Supreme Court first considered the Inyo Chemical Company case. It was held that the finding that the city was negligent was amply supported by the evidence. The cause was reversed solely on the issue of damages. The court then considered the Southern Pacific Company case in which the findings were in favor of the city. This judgment was reversed, the court stating (p. 548) : "It would be most anomalous for such decisions to stand, reaching diametrically opposite conclusions as to the legal effect of the same occurrence, where the essential facts are similarly presented, and are in most particulars undisputed. The rule that a reviewing court is bound by the findings of the trial court on conflicting evidence cannot apply to a situation such as this, where two lower courts, dealing with substantially the same evidence, have reached different conclusions of law, on the legal issue of whether from this evidence legal responsibility is imposed by the law upon the defendant. It is within the proper function of this court, upon petition for hearing, to eliminate this confusion, and to determine the legal effect of the evidence in both cases."

Appellants argue that this case stands for the proposition that where there are conflicting judgments on substantially similar evidence, although between different parties, the first judgment to become final is res judicata. The case stands for no such proposition. The most that the case stands for is that when there are two cases growing out of the same facts in which conflicting judgments are rendered, and both are before the Supreme Court at the same time on appeal, the Supreme Court, contrary to the general rule, and in order to harmonize the decisions, will weigh the evidence to determine which of the two conflicting findings should prevail in both cases. Such a rule can have no application to the facts here involved. ■ Here we have but one of the allegedly conflicting judgments before us on appeal. The judgment in the action by the Wilcox heirs against Salter has become final without appeal. The father and mother of Louis Morris were not parties to that action and could not have appealed therefrom. This court is not in a position to harmonize the two apparently conflicting judgments. If we were to weigh the evidence in the instant case, contrary to the general rule, and if we were to assume that the evidence in the first action was substantially similar, and then conclude that the one before us is correct and that the

first case was erroneously decided, we would be without power to reverse that erroneous judgment. The rule announced in the Southern Pacific Company case, *supra*, constitutes an exception to the general rule prohibiting an appellate court from weighing the evidence, and can have application only when the two conflicting judgments are before the court at the same time on appeal.

■■■■ Appellants next contend that the evidence, as a matter of law, is insufficient to support the judgment. The accident took place between 7 and 8 o'clock in the morning of December 6, 1940, on the main Valley Highway between Livingston and Delhi. For an appreciable distance both ways from where the accident occurred the highway is straight and practically level. The one and one-half ton Ford truck in which the Morris boys were riding was traveling south towards Livingston. Wilcox was driving his Diesel truck, with two large inclosed trailers attached, north towards Delhi. The morning was very foggy and the highway was wet. Wilcox and Louis Morris died upon the scene, Henry Morris died later the same day without recovering consciousness. There were no living eye witnesses of the accident. There were no marks on the highway by which the path of either truck immediately preceding the accident could be ascertained, other vehicles having obliterated such marks, if any, before the arrival of the officers. The truck-trailer was sixty feet long and eight feet wide. The Ford truck had an open box-like arrangement with side racks in which vegetables were being carried. The pavement at the scene of the accident is twenty-two feet in width, and has oiled shoulders on both sides. A white line is drawn down the center of the pavement.

Since the two trucks were proceeding in opposite directions, and since they met practically head-on, it is obvious that one of them was on the wrong side of the highway at the time of the accident. It is appellants' theory that the location of the two cars after the accident demonstrates, as a matter of law, that the Ford truck was the one that was being driven on the wrong side.

Because of the lack of any living eye witness, the evidence was entirely inferential in character. The exact point of impact is unknown. Witnesses testified that after the accident appellants' truck was diagonally across the highway on the

east side. The left front wheel was on the white center line, or just west of it, the balance of the truck being to the east of the center line. Inasmuch as Wilcox was proceeding north, that means that after the accident appellants' truck stopped on its right side of the highway. Pictures taken after the accident show, and several witnesses testified, that the front of the Ford truck was "wrapped around" the Diesel truck. After the accident the Ford truck was practically all on the easterly side of the highway, that is to say, on its wrong side. Only its right rear wheel was west of the center line. Its left rear wheel was on the white line. The wooden bed of the Ford truck was torn loose and tilted upright. The side racks of the Ford were torn loose and were lying on the west side of the highway. The crated vegetables were scattered along the highway for a distance of 133 feet south of where the two vehicles stopped. These vegetables were almost entirely on the west side of the highway, most of the crates being along the west edge thereof. The photographs demonstrate that the force of the impact must have been terrific.

The above physical facts were testified to by two police officers who arrived at the scene shortly after the accident occurred, and by a third witness who lived a mile and a quarter away, and who heard the crash and proceeded to the scene. Many pictures were introduced showing these facts in graphic detail. Respondents also read into the record the evidence of Mabel Bolton given in the Wilcox action. She was unavailable at the time of the present trial and her testimony on the prior trial came in by stipulation. She resided in a house located on the side of the highway some 350 feet from the scene of the accident. She testified that just before the crash she was sitting by the window of the house combing her hair and looking out, having been attracted by the fog; that as she looked out she saw a small truck pass going south; that the truck was then on its right-hand side of the highway and was going about twenty miles per hour; that almost immediately thereafter she heard the crash; that no other car passed going south between the time she saw the truck pass and the time she heard the crash. It would seem clear that from Mrs. Bolton's testimony the jury was entitled to infer that the car she saw was the Ford truck, and that 350 feet from the accident that truck was

on its right side of the highway going no more than twenty miles an hour.

Appellants urge that, as a matter of law, this evidence demonstrates that the Ford was on the wrong side of the highway, and that such negligence was the sole proximate cause of the accident. Neither conclusion is sound. The evidence shows that 350 feet from the scene of the accident the Ford truck was proceeding on its right side of the highway at a lawful and relatively slow rate of speed. The position of the trucks when they came to rest does not conclusively establish either the relative positions of the trucks before the accident or where the accident occurred. The Diesel truck was much larger and many times heavier than the Ford truck. The presence of the vegetables 133 feet south of where the truck stopped is some evidence that the large heavy Diesel truck must have pushed the small Ford truck a considerable distance north from the point of impact. Undoubtedly, the force of the impact catapulted the vegetables forward for some distance, as urged by appellants, but it is a reasonable inference that the point of impact was some appreciable distance south of where the trucks finally stopped. That being so, the physical position of the two trucks after the accident is not conclusive as to their position before the accident.

There is also the matter of speed. The pictures and other evidence of the physical facts support the inference that one or both trucks was proceeding at an excessive rate of speed. Appellants argue that, even if the jury could have inferred that the Diesel truck was proceeding at an excessive rate of speed, such negligence could not have been the proximate cause of the collision; that the presence of the Ford on the wrong side of the highway was the sole proximate cause. If negligence can be inferred, then whether such negligence was a proximate cause of the accident is a question of fact for the jury. It must be remembered that it is not sufficient for appellants to show that Henry Morris was negligent—they must also show that, as a matter of law, Wilcox was not negligent. The jury apparently found that both Henry Morris and Wilcox were negligent.

From the above evidence, although the inferences and presumptions therefrom are in conflict, we think the jury could reasonably have inferred or presumed that Wilcox

was negligent and that his negligence alone or concurring with that of Henry Morris, was the cause of the accident. In support thereof there is the evidence that 350 feet from the accident the Ford was proceeding at a lawful rate of speed on its own side of the highway. There is the evidence from which the jury could infer that both trucks were proceeding at an excessive rate of speed. There is also the presumption that Louis and Henry Morris were exercising due care for their own safety. That presumption also exists in favor of Wilcox, but as between conflicting disputable presumptions and conflicting inferences it is the function of the jury and not of the appellate court to determine which shall prevail.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.