[L. A. No. 22263. In Bank. May 13, 1952.]

LYMAN D. PFINGSTEN, Respondent, v. ROBERT E. WESTENHAVER, as Administrator, etc., Appellant.

Early, Maslach, Foran & Tyler, George Maslach, Donald J. Pierr and John B. Connolly for Appellant.

Daniel E. Farr, W. T. Stockman and Richard P. Roe for Respondent.

EDMONDS, J.—The appeal of the administrator is from a judgment entered upon the verdict of a jury in an action for damages to property occasioned by the collision of an automobile and a tractor pulling a trailer. The principal questions presented for decision concern the asserted negligence of the driver of the automobile, its ownership, and the amount of damages recoverable by Pfingsten if the liability of the estate of Mrs. Adams is established.

The only evidence as to the manner in which the collision occurred was presented by the deposition of John De Groote, who testified as a witness for Pfingsten. On the evening of the accident, De Groote said, he was driving south at 38 miles per hour on a highway in Iowa. The road was covered with ice. The automobile in which Mrs. Adams and her son were riding passed his approximately three-fourths of a mile north of a bridge. It was then traveling about 40 to 50 miles per hour. After the Adams car passed, De Groote slowed down somewhat because the road was icy.

Pfingsten's tractor-trailer combination, traveling north on the same highway, was then approaching the southern end of the bridge. Pfingsten dimmed his headlights for the oncoming automobiles. Shortly before the collision, De Groote observed the Adams automobile on its right side of the highway "until they used their brake lights." From the position of its headlights, the Pfingsten tractor-trailer also appeared to be on its right side of the road.

At the moment of impact, De Groote was about 400 to 500 feet north of the point of collision. He saw the brake lights of the Adams car go on. Immediately thereafter, its headlight beam "went up towards the southeast" and "shone or hit the east side of the bridge." This was "just a few seconds" before the accident occurred. After that, all he saw was "just a dark cloud." He did not see the vehicles come together. "There was no light at all there for a second." The headlights of the tractor-trailer were not visible to him "because the car was in front of it."

The collision occurred at the north end of the bridge. After the "cloud of dust," De Groote saw "a truck and car com-

ing towards me.'' His automobile passed between the still moving vehicles, through the debris and stopped on the bridge. He did not apply his brakes ''because there was just a little bit of a ridge on the ice there'' and he ''would have hit the bridge.'' This ridge of ice ''threw a lot'' of automobiles as they attempted to stop for the accident. After De Groote stopped, the Adams automobile was on the shoulder on the east side of the highway and the tractor-trailer was in the ditch to the west of the road. The wreckage had come to rest about 70 or 75 feet north of the bridge.

According to De Groote, the automobile was struck on its right side, just behind the motor. Pfingsten said it had been hit ''almost directly in the middle'' of the right side, and was demolished. The impact upon the tractor was from the front, with slightly more damage to the right side than to the left. He also stated that, after the collision, his tractor had no value.

As to the ownership of the automobile, De Groote testified, ''I learned with the inquest we had that it was Mrs. Adams'.'' Pfingsten told the jury that he examined the automobile after the accident and removed from the steering column a registration certificate bearing the name ''Mrs. Maidie Blanche Adams.'' He did not remember whether the certificate was of white or pink color, nor did he recall whether there were one or two documents on the steering column. Westenhaver's counsel showed him a purported automobile registration certificate which bore the name of someone other than Mrs. Adams. Pfingsten said it could have been the certificate he saw in the automobile. This slip was admitted into evidence for the purposes of impeachment, but not ''for the truth of the matters contained on it.'' There was no other evidence concerning ownership of the automobile.

Witness Al Livak testified that his business was the sale of trucks and automobiles. He also conducted a mechanical and body repair service garage. He had seen Pfingsten's tractor ''within two weeks'' prior to the date of the collision. In his opinion, at the time of the accident the tractor was worth ''about $3,700''; thereafter it had only salvage value.

Following the collision, Pfingsten was able to shut off the two rear compartments of his trailer, minimizing the loss of cargo through leakage. Of the 4,800 gallons of fuel oil in the tank at the time of the collision, he recovered 1,541 gallons by using another tractor-trailer unit at a cost of $50.

He stated that he had to pay $335.60 for the oil which was lost.

The cost of towing the trailer to Omaha for repairs was $182. In addition, Pfingsten testified that the reasonable value of towing the tractor from the point of collision was $80.

As soon as he learned that his tractor was useless, Pfingsten placed three orders for a new tractor of the same make and attempted unsuccessfully to secure a tractor of another make. He was unable to obtain delivery of a new tractor until 89 days after the date of the collision. During this period he was not able to lease a tractor. He testified that the reasonable rental value of a tractor-trailer unit such as his was 20 to 25 cents per mile, which included approximately five cents per mile for fuel and depreciation. The rental was the same whether or not a driver was provided for the vehicle. Pfingsten averaged 300 miles per day, six days a week, with his equipment.

Upon this and other evidence, the jury returned a verdict for Pfingsten and assessed damages in the amount of $7,200. The appeal is from the judgment subsequently entered.

Westenhaver contends that the evidence is not sufficient to support the verdict, in that there is no substantial evidence of either negligence on the part of the driver of the automobile or of ownership of the automobile. Pfingsten's testimony as to the reasonable value of repairs to his trailer and other items of damage claimed by him was erroneously admitted, Westenhaver says, because Pfingsten did not qualify as an expert. Westenhaver also contends that evidence of damage to the trailer should not have been received because the condition of the trailer before the accident was not shown and there is nothing in the record upon which to base the jury's implied finding that the damages were caused by the accident. Evidence of loss of use of the tractor was improperly admitted, it is said, because under Iowa law a plaintiff may not recover for loss of use of property totally destroyed. He also takes the position that evidence of the rental value of a tractor-trailer combination will not support an award for loss of use of the trailer alone. Other grounds relied upon are that certain instructions constituted reversible error.

Pfingsten, on the other hand, contends that the evidence is sufficient to support the verdict. He asserts that there was no error either in the admission of evidence or the instructions to the jury.

The law of the forum controls the rules of evidence, including the question of its sufficiency. (Rest., Conflict of Laws, § 595; 15 C.J.S. 955; *cf. Estate of Winder,* 98 Cal. App.2d 78, 84 [219 P.2d 18]; see *Sayles* v. *Peters,* 11 Cal. App.2d 401, 407 [54 P.2d 94].) Applying that principle, the sufficiency of the evidence to support the verdict must be determined in accordance with the law of California.

If there is any evidence which sustains the implied finding of the jury, its determination is final. (*Skulte* v. *Ahern,* 22 Cal.App.2d 460, 463 [71 P.2d 340]; *Kleem* v. *Chapot,* 112 Cal.App. 553, 556 [297 P. 574].) "Where different conclusions may reasonably be drawn from the evidence by different minds the trial court's findings are not to be disturbed on appeal." (*Connor* v. *Owen,* 28 Cal.App. 2d 591, 592-593 [82 P.2d 1114]; *Morris* v. *Fortier,* 59 Cal. App.2d 132, 141 [138 P.2d 368].)

The record in the present case includes undisputed evidence showing that the Adams automobile was traveling at a high rate of speed upon a treacherously icy highway. Brakes were applied under conditions conducive to skidding. The headlight beam of the automobile suddenly swung at an angle to the previous line of travel and the collision occurred. From such evidence, the jury reasonably could have concluded that the driver of the Adams automobile was negligent and that his negligence was the cause of the collision.

Upon the issue of liability, Westenhaver argues that the "only uncontroverted evidence" of ownership was improperly admitted hearsay testimony by De Groote. But the record does not indicate that it was hearsay. De Groote testified from his own knowledge. (Code Civ. Proc., § 1845.) How he acquired his knowledge does not appear. Under the circumstances, the trial court properly overruled Westenhaver's motion to strike the testimony. Even if it might be said to be hearsay, its admission was not prejudicial. (*Sanguinetti* v. *Pelligrini,* 2 Cal.App. 294, 299 [83 P. 293].)

Pfingsten's testimony concerning the registration slip which he saw in the automobile is said to have been impeached upon cross-examination. However, his credibility, and the weight to be given his testimony, were questions for the determination of the jury. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [158 P.2d 3]; *Stromerson* v. *Averill,* 22 Cal.2d 808, 814-815 [141 P.2d 732]; *Hershey* v. *Laswell,* 63 Cal.App.2d 219, 222 [146 P.2d 509].) His uncontroverted testi-

mony was sufficient to establish the ownership of the automobile. Westenhaver presented no evidence upon the issue of ownership. His offer in evidence of an automobile registration certificate was not made to prove the truth of its statements.

Because Pfingsten did not qualify as an expert, Westenhaver argues, the admission of his testimony concerning the reasonable value of repairs to his trailer and other charges, including the value of loss of use, was prejudicially erroneous. According to Westenhaver, Pfingsten did not have sufficient knowledge of the various subjects to entitle his opinion to go to the jury. He was not shown to be engaged in the business of repairing or towing damaged vehicles, nor did he have any experience in renting his trailer as a separate unit.

Pfingsten testified that he had been in the oil trucking business for eight years, five of them in the vicinity of this collision. Before going into business for himself, he had worked for two oil companies. For "two or three years" prior to the collision he had been working for himself. His recital of experience with tractors and trailers during this time shows knowledge of the reasonable charges for towing and repairing tractors and trailers and the reasonable rental value of such equipment.

 "The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a manifest abuse of such discretion the ruling of that court will not be disturbed upon appeal." (*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 714 [242 P. 703]; *Hutter* v. *Hommel*, 213 Cal. 677, 681 [3 P.2d 554]; *Humiston* v. *Hook*, 86 Cal.App.2d 101, 105 [194 P.2d 122]; *Valdez* v. *Percy*, 35 Cal.App.2d 485, 492 [96 P.2d 142].) "If the witness disclosed an ample knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility." (*Darling* v. *Pacific Electric Ry. Co., supra*; *Howland* v. *Oakland Consol. St. Ry. Co.*, 110 Cal. 513, 522 [42 P. 983].)

 Westenhaver argues that Pfingsten could not testify to the rental value of a trailer alone because he had never rented a trailer without a tractor and driver. This argument overlooks the fact that Pfingsten's damaged vehicle was a tractor-trailer combination and not two separate vehicles. Pfingsten stated that a trailer could not be rented sep-

arately without a tractor. He is seeking damages for loss of use of his vehicle, a tractor-trailer combination, not for loss of use of a portion of it which without motive power is useless. His testimony upon this element of damages was competent and properly admitted.

■ Evidence of damage to the trailer was erroneously admitted, Westenhaver says, because no facts tending to prove its condition before the accident or the cause of injury to it were presented. However, De Groote's testimony shows that the tractor-trailer combination was traveling upon the highway prior to the collision. Although he did not see the collision, he saw the wreckage of the two vehicles as they parted, and the trailer sliding down into the ditch. Pfingsten's testimony was to the effect that immediately after the collision the trailer contained 4,800 gallons of fuel oil. It was then punctured and leaking. He also testified that he saw the repairs made to his trailer and that they were necessary to put it back on the road.

■ Section 1963 of the Code of Civil Procedure states the presumptions that "things have happened according to the ordinary course of nature and the ordinary habits of life" (subdiv. 28) and that "a thing once proved to exist continues as long as is usual with things of that nature." (Subdiv. 32.) The trailer was traveling upon the highway immediately prior to the collision. It may be presumed that it was carrying a cargo at that moment, because in the ordinary course of nature it would not have been empty an instant before the impact and immediately thereafter full of fuel oil.

■ When, as here, the evidence shows that there has been a collision, damage, and the necessity of repairs to restore the vehicle to the condition it was in prior to the collision, the evidence supports the inference that the repairs were made necessary by the accident. (*Menefec* v. *Raisch Improvement Co.*, 78 Cal.App. 785, ·789 [248 P. 1031].) *Moore* v. *Levy*, 128 Cal.App. 687 [18 P.2d 362], upon which Westenhaver relies, is distinguishable from the present situation upon its facts. In that case, there was no evidence to show what repairs were made. Moreover, the testimony as to the necessity for the repairs was improperly admitted because the witness did not establish his qualifications.

■ Westenhaver argues that evidence of loss of use of the tractor was improperly admitted because, under the law of Iowa, a plaintiff may not recover for loss of use of property

totally destroyed. He concedes that Pfingsten's tractor was a total loss. Here again, Westenhaver bases his contention upon the erroneous premise that two vehicles belonging to Pfingsten, rather than one, were damaged.

Pfingsten does not dispute the general legal proposition that there cannot be recovery for both total loss of automotive equipment and loss of use of the same equipment. However, he argues that his tractor-trailer combination was a single vehicle which was not totally destroyed, but was damaged. The undisputed evidence supports his argument. Clearly, from his testimony a trailer is virtually useless without a tractor and the equipment is of value only when used in combination.

In *Kohl* v. *Arp*, 236 Iowa 31 [17 N.W.2d 824, 169 A.L.R. 1067], Kohl brought an action for damages to his truck. It consisted of a truck frame with a "lime box" bolted thereto. His complaint alleged damages for total loss of the lime box, less salvage, damages to the truck frame, and damages for loss of use of the combined unit. The court stated the general rule that loss of use cannot be included as damages where recovery for total destruction is allowed. It then held that the rule could not be applied to a separate part of a combined unit. It held that, "the rule of damages must be applied here to the combined unit and that the net cost of the new lime box must be treated as a part of the cost of repair. It then logically follows that the value of the loss of use of the truck and lime box as one unit was proper to be considered." (P. 34.)

Kohl's lime box and truck could not be used separately; neither could Pfingsten's tractor and trailer. For all practical purposes, Pfingsten's combination constituted one truck as much as did Kohl's. Therefore, adopting the rule of damages applied by the Iowa Supreme Court, the net cost of the new tractor must be treated as a part of the cost of repair and Pfingsten is entitled to the value of the loss of use of his tractor-trailer combination as one unit.

Westenhaver repeats his preceding argument in different form by contending that evidence of the rental value of the tractor-trailer combination cannot support an award for loss of use of the trailer alone. Here, again, he misconceives the theory of Pfingsten's action, which is for loss of use of a tractor-trailer combination. The evidence shows that the component parts of the single vehicle had no separate rental values. Evidence upon the rental value of the com-

bination was proper to determine damages for loss of use of the combination.

In computing damages for loss of use of the vehicle, the court may take into consideration necessary delay in procuring parts as bearing upon the reasonable time for making repairs. (*Kohl* v. *Arp, supra,* p. 39.) The evidence here is sufficient to show that Pfingsten used due diligence in attempting to replace his tractor. Under the circumstances, it cannot be said that the time expended in making repairs, including replacement of the tractor, the essential propelling part of the combination, was not reasonable.

The trial court instructed the jury that: "If you find under the evidence in this case that plaintiff is entitled to recover for the total destruction of his truck, you are instructed that the measure of damages is the reasonable market value of the truck immediately before its destruction, plus the reasonable value of the use of the truck while being replaced with ordinary diligence."

The jury also was told "that the measure of damages is the reasonable cost of repairs to restore the trailer to its former condition, plus the reasonable value of the use of the trailer while being repaired with due diligence."

Westenhaver contends that these instructions constituted reversible error. Essentially, his objections repeat the arguments which have been considered. Any error in the instructions was not prejudicial. Pfingsten was entitled to recover the reasonable cost of repairs to restore his tractor-trailer combination to its former condition, plus the reasonable value of its loss of use while being repaired with due diligence. The tractor was an essential part which had to be replaced to restore the combination to service. Instead of instructing the jury upon the measure of damages for the injury to the tractor-trailer combination, the court separately stated the measure of damages for the tractor and the trailer. The error, if any, in thus splitting the measure of damages for an indivisible vehicle was prejudicial to Pfingsten, rather than to Westenhaver. Not being aggrieved, Westenhaver may not complain of the instruction.

Westenhaver contends that the instruction on the measure of damages for injury to the trailer was erroneous because it failed to incorporate the qualification that the total damages could not exceed the value of the trailer before the

collision. He correctly states that the record is devoid of any evidence of the value of the trailer before the accident.

When there is a complete lack of evidence tending to show a diminution in value of injured personalty, the court may not assume that the diminution in value was of lesser amount than the proved reasonable cost of necessary repairs. (*Santos* v. *Scharz*, 87 Cal.App. 758, 762 [262 P. 764].) "If the diminution in value of the injured truck was less than the repair bill, the defendant should have shown that fact in reduction of the damages claimed by the plaintiff, for the burden of showing matters in reduction or mitigation of damages rested upon the defendant. The reasonable cost of making necessary repairs in such cases as this has been accepted as a proper element in determining the amount recoverable as damages . . . and we think it proper to accept it as such in the establishment of a *prima facie* admeasurement of damages, subject to the right of the adverse party to apply to it the test as to whether or not the diminution in value by reason of the injury was less than the repair bill, and if so, to reduce the damages recoverable to equal the sum representing such difference in value.

"The defendant having failed to make any showing in reduction of damages, cannot now be heard to complain." (*Rhodes* v. *Firestone Tire Etc. Co.*, 51 Cal.App. 569, 574 [197 P. 392].) The instruction of which Westenhaver complains was based upon the evidence. If it contained any error, it was in improperly splitting the measure of damages for the tractor and the trailer with no prejudice to Westenhaver.

The court also instructed the jury that: "The law presumes that a thing once proved to exist continues as long as is usual with things of that nature; therefore, if you find under the facts of this case that plaintiff's vehicle was in a certain condition prior to the occurrence on which plaintiff has based his claim against the estate of decedent, then you are to presume that this condition of the vehicle continued to exist so long as is usual with things of that nature." For reasons which have been stated, the record fully justifies this instruction.

The final contention made by Westenhaver is that the verdict is in excess of proven damages and was the result of surmise and conjecture. The record does not support this contention. The verdict is substantially less than either the prayer or the total of the amounts testified to as

damages. That the verdict of the jury differs from the total damages shown by uncontradicted evidence is not, by itself, a basis for assuming that it was the result of surmise and conjecture, at least where the damages awarded are substantial. ▮ In any event, Westenhaver cannot complain of a verdict which is considerably below the amount which might have been awarded under the evidence.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.