[Civ. No. 11447.  Second Appellate District, Division One.—July 8, 1938.]

DELPHIN D. DULL, Appellant, v. THE ATCHISON, TO-PEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

E. B. Drake for Appellant.

Robert Brennan, Leo E. Sievert and H. K. Lockwood for Respondents.

WHITE, J.—In this action by a husband and father for the death of his wife and two minor children, the court instructed the jury to return a verdict for the defendants. From the judgment entered thereon this appeal is prosecuted.

The facts necessary for a correct understanding of the questions involved on this appeal may be thus briefly stated: On the morning of June 18, 1936, shortly after 8:30 o'clock, Ruby Marie Dull, wife of appellant, accompanied by their minor children, aged 9½ and 3½ years respectively, were riding in an automobile driven by Mrs. Dull. They were proceeding in a southerly direction on a country road, and while attempting to pass over an open grade crossing of respondent railway company, were struck by a passenger train approaching from their right at a rate of speed estimated to be in the neighborhood of sixty miles per hour.

It is unnecessary here to consider in detail the power of the court to direct a verdict, because this question has received the attention of the courts of this state on numerous occasions, and the principles were reviewed in *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768], quoted with approval in *Estate of Flood,* 217 Cal. 763 [21 Pac. (2d) 579]. Suffice it to say that the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict.

In support of his claim that the evidence was susceptible of reasonable inferences which should have required the court, without weighing that evidence, to deny the motion, we are directed by appellant to testimony that the deceased and her children were driving slowly on a clear day; that the rails of the single track were about two inches above the

fill-in or ballast between the rails, and that the ballast was rough and broken; that this was an open crossing, so far as Mrs. Dull was concerned, for sixty feet away from the track; that the driver of the automobile was in good health and a competent driver. Appellant further asserts that while the engine men of respondent railway company testified that the whistle was blown and the bell rung, several witnesses, claimed to be within hearing distance of the crossing at the time of the accident, did not hear the whistle or the bell; that the automobile approached the railroad crossing at a speed of approximately twenty miles per hour, slowing down to approximately one or two miles per hour, and finally, as the fireman testified, actually coming to a stop on the tracks. The fireman, who was situated on the side of the engine cab from which the automobile approached, testified that when he first saw the automobile come from behind some bushes and trees, the train was 150 yards away from the crossing and the automobile was about fifty or sixty feet from the tracks; that he immediately called out to the engineer to "hold her", which in railroad parlance means to apply the emergency air.

Appellant first contends that the evidence shows that respondent railway company negligently maintained this crossing in violation of the bounden duty of every railroad company to construct and thereafter maintain crossings over public highways on the line of its road in such a manner that the same shall be reasonably safe for persons lawfully and properly using it. In support of this claim appellant urges that the evidence shows that the rails of the track in question protruded some two inches above the fill-in or ballast between the rails and that the ballast was rough and broken up near both rails; that the evidence showed, in an experiment made subsequent to the accident, that when an automobile of the same make and type, traveling between one and two miles per hour, struck the rail, it stopped and "seemed to come back". From this testimony, appellant argues that, remembering the fireman's testimony that Mrs. Dull's automobile stopped on the track, the jury was entitled to draw an inference that the sole proximate cause of the accident was the dangerous and unsafe condition of the tracks as maintained by respondent railway company. No reasonable person, urges appellant, would drive upon the track and voluntarily stop thereon in front of a swiftly approaching

train. A photograph introduced in evidence shows the physical facts with reference to the condition of the rails to be as contended by appellant. In answer to the foregoing, respondents claim that the photographs show a grade crossing in a "fairly good state of repair" and further contend that "there was no evidence in the case that tended to prove that the condition of the crossing had anything to do with the accident". We find ourselves in accord with this claim of respondents. The record is barren of any substantial evidence to show that the condition of the rails proximately contributed to the accident. It is the law that by proving a defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. (*Union etc. Co.* v. *San Francisco Gas etc. Co.*, 168 Cal. 58 [141 Pac. 807].) While on a motion for a directed verdict all reasonable inferences are to be drawn from the evidence in favor of the plaintiff and conflicts are also to be resolved in favor of the plaintiff, nevertheless, inferences cannot be based on imagination, speculation or supposition. (Secs. 1958, 1960, Code Civ. Proc.)

Appellant next asserts that conceding the deceased drove the automobile upon the tracks in front of the approaching train, nevertheless, if she saw the train coming, then formed a judgment as to its distance away and its speed and believed it was reasonably safe to make the crossing, but her judgment proved erroneous and she was struck, she is not guilty of negligence as a matter of law, but that the question of her negligence is one for the jury. In this connection, Fireman Collins testified that he first saw the automobile when the train was about 150 yards from the crossing and the automobile was traveling about twenty miles per hour; that when the automobile was about fifty or sixty feet from the track it slowed down "almost to a stop" and then "proceeded to drive up on the track" and stopped, at which time the train was about sixty to eighty feet from the automobile. With reference to the conduct of the fireman after he saw the automobile, he testified: "Well, when I decided that she was going to drive up on the track—seen that she was—I hollered to the engineer to hold her," which, the witness testified means "just what it says, to hold her to emergency—hold everything". The fireman was unable to state how far the train was from the crossing when he called

this warning to the engineer. With reference to warning signals, both the engineer and the fireman testified that the whistle was blown, and the former testified he blew the whistle continuously from a point 1300 or 1400 feet from the crossing up to the time of the collision. The negative testimony of other witnesses, some 350 feet removed from the crossing and engaged in conversation, that they did not hear or were not sure that they heard the whistle, does not entirely destroy the probative value of the engine men's positive evidence.

We come now to a consideration of respondents' claim that the deceased, in driving the automobile, was guilty of negligence that proximately contributed to the accident. We have already set forth a general statement of facts in the first part of this opinion. There are minor details not included in the foregoing general statement, but we do not think it will be necessary to set the evidence out more fully than has already been done. From the facts as they are contained in the record, it appears that the deceased approached an open railroad crossing with a clear view of the tracks in both directions from a point sixty feet away from the crossing; that as she approached the railroad tracks she slowed down to about two miles per hour, and then drove up a short incline and onto the tracks, where she was struck by the train. Driving an automobile which the appellant, who was the owner thereof, testified could be stopped within twelve or fourteen feet when going twenty miles per hour, and within about nine feet when going twelve or fifteen miles per hour, we find the deceased, according to the evidence, going twenty miles per hour when within five hundred feet of the crossing in question, and at a much slower speed for the last sixty feet, with an unobstructed view, still continuing to drive up to and upon the track in the face of the fast approaching train. With this picture, it would be idle to attempt to show ordinary care or prudence upon the part of the deceased. As a matter of fact, in order to justify the conduct of the unfortunate decedent, we would be first compelled to overrule every known California case involving accidents at railroad crossings. Appellant relies largely upon an indulgence of the presumption of ordinary care and diligence on the part of decedent from all the circumstances of the case and the natural instinct of self-preservation—and contends

that because thereof the motion for a directed verdict should have been denied. However, this presumption arises only in the absence of direct proof of the facts. The circumstances of this case alone are sufficient to rebut the presumption claimed. In *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651], as to this issue, it was said: "But the cases arising from injuries suffered at railroad crossings have been so numerous, and upon certain points there has been such absolute accord, that what will constitute ordinary care in such a case has been precisely defined, and, if *any* element is wanting, the courts will hold as a matter of law that the plaintiff has been guilty of negligence. And, when injury results which might have been avoided by the use of proper care, the plaintiff cannot recover, although, the defendant has also been guilty of negligence." (Italics added.) It was incumbent upon the deceased to use the care and caution commensurate with the apparent danger surrounding her when she approached the railroad crossing. If the unfortunate woman had observed the rule of conduct which the law prescribed she would not, in all human probability, with her minor children, have met untimely death.

Appellant next contends that under the doctrine of last clear chance the cause should have been submitted to the jury. However, the facts of this case do not call for the application of this doctrine, for it is apparent from the evidence that the deceased was driving her automobile very slowly and could have stopped at any time within a few feet after she came into a position of peril. Therefore the negligence of the deceased continued until practically the exact moment of the impact, and plaintiff could not recover. Further, until this negligence of the deceased terminated, the doctrine of last clear chance has no application. In *Holmes* v. *Southern Pac. C. Ry. Co.*, 97 Cal. 161, at page 169 [31 Pac. 834], it was said: "But the rule which permits a recovery notwithstanding some negligence on the part of the plaintiff or person injured is only properly applied in those cases where such negligence was the remote and not the proximate cause of the injury,—that is, where the negligent acts of the parties were independent of each other"; and when we apply this rule to the case here it is at once seen that even if it should be conceded that there was negligence upon the part of the railway company in its management of the train at the

time of and just preceding the accident, still the plaintiff would not be entitled to recover, as such accident could not have occurred without the concurrent and active negligence of the deceased at the time. The defendant was not the only one who could have prevented the accident, but on the contrary, if the deceased had herself used ordinary care at the time, she could not possibly have been harmed by defendant's train, which was confined to the track upon which it ran. Practically up to the very moment her automobile was struck by the train, it was within her power to escape injury by simply stopping her slowly moving automobile. The deceased being actually and contemporaneously at fault until the moment of the collision, the appellant is barred from the right to recover through an application of the last clear chance doctrine. (*Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, 41 [76 Pac. 719, 101 Am. St. Rep. 68]; *Giannini* v. *Southern Pac. Co.*, 98 Cal. App. 126, 132 [276 Pac. 618].)

The final question presented is whether the negligence of the wife bars a recovery by the husband for the death of the minor children. It is the law that the contributory negligence of the mother is a defense to an action on behalf of the community to recover for death of the children, because in caring for the children she represents and acts for the community and for the husband as head of the community. And her negligence, if any, in caring for the children is the negligence of the husband. (*Keena* v. *United Railroads of San Francisco*, 57 Cal. App. 124, 132 [207 Pac. 35]; *Cossi* v. *Southern Pac. Co.*, 110 Cal. App. 110, 113 [293 Pac. 663].) In the case at bar there can be no question but that the children were in the custody of the deceased by and with the consent of appellant.

The judgment appealed from is therefore affirmed.

York, P. J., and Doran, J., concurred.