[L. A. No. 23340. In Bank. Feb. 18, 1955.]

DORIS CALLAHAN, Appellant, v. ROBERT JUNE GRAY, Respondent.

*Assigned by Chairman of Judicial Council.

Edward Clayton Jones and William M. Anderson for Appellant.

Spray, Gould & Bowers and Philip L. Bradish for Respondent.

SCHAUER, J.—Plaintiff appeals from an adverse judgment, entered on a jury verdict, in her action to recover for alleged personal injuries resulting from an impact with defendant's automobile when plaintiff was walking across Fair Oaks Avenue in South Pasadena, in a marked pedestrian crosswalk. She contends that the evidence as a matter of law is insufficient to support the verdict and ensuing judgment. Contrary to plaintiff's contention, the evidence amply sustains implied findings by the jury (1) that plaintiff negligently walked into the side of defendant's automobile rather than being struck by it, and (2) that plaintiff was not injured by the occurrence. Since either of such findings would support a verdict for defendant, it follows that plaintiff's contention is untenable and, hence, that the judgment should be affirmed.

A purported appeal, also filed by plaintiff, from the court's order denying her motion for a new trial will be dismissed, as such an order is not appealable. (*Reeves* v. *Reeves* (1949), 34 Cal.2d 355, 357 [209 P.2d 937]; see also 3 Cal.Jur.2d 500.)

The impact or collision between plaintiff and defendant's automobile took place about 9 o'clock in the evening in March, 1952. Fair Oaks Avenue runs north-south, and the crosswalk is in the middle of the block rather than at an intersection; it was not controlled by lights or other traffic device. Plaintiff was crossing Fair Oaks from west to east, while defendant was driving north in the "curb lane" of traffic and approaching the crosswalk. Plaintiff testified that she was in the crosswalk and had seen defendant's car before she had reached the center of Fair Oaks, that the headlights were on, and the car was about half way between the crosswalk and the closest street intersection to the south and was traveling 20 to 25 miles an hour, "not going fast." Plaintiff continued walking, noticed that defendant started to slow down, and "thought he was waiting for me"; she did not know how fast he was going then. Plaintiff did not continue to watch the car but instead looked ahead at the door of the restaurant to which she was going "to get over to the curb"; she did not recall seeing the car from the time it slowed down to the time of impact with her. She stated that her legs were "contacted" by the left front fender of the car, but she did not remember whether it was the front or the side of such fender that touched her; neither was she "positive" that the impact knocked her to the ground, "I only went

by what a witness said.'' She further testified she did not know where she was when the impact took place, whether the front bumper touched her body, whether she put out either of her hands to brace herself against falling, or when defendant's car stopped although she stated it did stop. After the impact plaintiff went to the door of defendant's car, asked him ''why he didn't watch where he was going,'' and without waiting for a response walked on over to the east curb of Fair Oaks. Plaintiff also testified that defendant got out of the car and offered to take plaintiff to the hospital, but plaintiff told him she didn't think she was hurt; she repeated the statement to police officers when they arrived a few minutes later. Plaintiff then returned to a bowling alley on the west side of Fair Oaks, where she remained until approximately 11 p. m., bowling at least two games in the interim.

Defendant testified that as he was approaching the crosswalk and just before the impact he had stopped behind another car, had just started up again, and was traveling less than 5 miles per hour when he first saw plaintiff. She was then on the left side of his front fender, approximately the ''middle of the wheel.'' Defendant stopped ''right then . . . the minute'' he saw her; no time elapsed between the time he saw her and the time his car stopped. The front part of his car did not collide with plaintiff and there was nothing to cause him to believe he had struck her at the time he saw her and stopped his car. Plaintiff was not knocked to the pavement, but remained ''standing on her two feet'' with her hands touching the left front fender. Defendant offered to take plaintiff to a doctor or to a hospital but plaintiff stated she was not hurt, that ''she had a [bowling] tournament and she wanted to bowl.''

It may also be noted that much of the testimony of both plaintiff and defendant was given in reference to a blackboard diagram which was not preserved for, or incorporated into, the record on appeal.

Medical testimony of a doctor who examined plaintiff some two and one-half months following her alleged impact with defendant's car was that her chief complaints were of pain in one shoulder, numbness of one arm, headaches, taut feeling in back and side of neck, and nervousness; that the doctor had ''carefully gone over the history, and . . . performed a physical and neurological examination'' on plaintiff; that the ''Neurological examination was entirely negative. The patient's symptoms are entirely subjective. It is my opinion

that this patient is neurologically negative, and is suffering from a psychoneurosis."

 It is elementary that "Whether or not defendant was guilty of negligence . . . or plaintiff was guilty of contributory negligence . . . is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented" (*Gray* v. *Brinkerhoff* (1953), 41 Cal.2d 180, 183 [258 P.2d 834]) and "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court [or jury]" (*Crawford* v. *Southern Pac. Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Bristol* (1943), 23 Cal.2d 221, 223 [143 P.2d 689]; see also *Richter* v. *Walker* (1951), 36 Cal.2d 634, 640 [226 P.2d 593]; *Brucks* v. *Home Federal S. & L. Assn.* (1951), 36 Cal.2d 845, 850 [228 P.2d 545]; *Pfingsten* v. *Westenhaver* (1952), 39 Cal.2d 12, 19 [244 P.2d 395]; *Holmberg* v. *Marsden* (1952), 39 Cal.2d 592, 596 [248 P.2d 417]; *Thomas* v. *Hunt Mfg. Corp.* (1952), 42 Cal.2d 734, 735 [269 P.2d 12]; *Shoemake* v. *Wilsey* (1954), 43 Cal.2d 686, 688 [277 P.2d 17]).

 The evidence hereinabove recited would support jury findings that plaintiff, without looking where she was going, negligently walked into the side of defendant's car, and also that plaintiff suffered no injuries from any impact which occurred. Since from either of such findings a verdict and judgment for defendant would follow, the judgment for defendant must be affirmed.

For the reasons above stated the judgment is affirmed and the purported appeal from the order denying new trial is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J., Concurring.—This case is obviously before this court because a majority of this court was dissatisfied with the treatment of its opinion in *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834], by the District Court of Appeal when the case at bar was decided by that court (see (Cal. App.) 272 P.2d 56). This is not the first time that District Courts of Appeal have been misled by the decision of this court in *Gray* v. *Brinkerhoff, supra* (see *Shoemake* v. *Wilsey*,

*(Cal.App.) 266 P.2d 807). The difficulty seems to be that the District Courts of Appeal in the above mentioned cases have sought to state a rule of law enunciated by this court in *Gray* v. *Brinkerhoff, supra,* without realizing that in the last mentioned case this court did not purport to announce a rule of law but decided only issues of fact. This I endeavored to point out in my dissent in *Gray* v. *Brinkerhoff* (see 41 Cal.2d 186). I predicted at that time that the majority decision in that case would result in great confusion, and it is obvious that my prediction has to some extent at least come true.

While it is true that there are some slight factual differences between the case at bar and *Gray* v. *Brinkerhoff, supra,* I am constrained to believe that counsel for appellant in the case at bar were clearly justified in prosecuting this appeal upon the authority of that case. In fact, they would have been derelict in their duty to their client had they not done so.

I feel it my duty to again call attention to my dissenting opinion in *Gray* v. *Brinkerhoff, supra,* and my concurring opinion in the recent case of *Shoemake* v. *Wilsey,* 43 Cal.2d 686, at page 688 [277 P.2d 17], and suggest that before prosecuting appeals in cases such as these, consideration should be given to the settled rules with respect to the power of an appellate court to review determinations of fact by a trial court or jury as outlined in my dissenting opinion in *Gray* v. *Brinkerhoff, supra.* Since it is obvious from a reading of the record in the case at bar as well as in the case of *Gray* v. *Brinkerhoff, supra,* that both the issue of negligence and that of contributory negligence were issues of fact, and no reversible error was committed by the trial court, the judgment should be affirmed.

---

*A hearing was granted by the Supreme Court on April 14, 1954. The final opinion of that court is reported in 43 Cal.2d 686 [277 P.2d 17].