[Civ. No. 5775.   Fourth Dist.   Dec. 17, 1958.]

THURSTON C. JORDAN et al., Respondents, v. JOSEPH E. HENCK et al., Appellants.

Wilson & Wilson for Appellants.

Allard, Shelton & O'Connor for Respondents.

SHEPARD, J.—In 1929 defendants owned Lots 1 and 2 of Block 10 "Arrowhead Lakeview Forest." They then sold Lot 1 to another person. After the sale of Lot 1, they purported by grant deed to convey to the State of California a "right of way and incidents thereto for said State Highway upon, over and across . . . blocks . . . 10 . . . as . . . designated upon that certain map entitled 'Arrowhead Lakeview Forest' . . . etc."

In the year 1947, defendants regained title to said Lot 1. They still owned Lot 2, so that they then owned both Lots 1 and 2. Lot 1 was improved with a store building and a gasoline pump. After this union of title defendants leveled a portion of Lot 2 and established a service station thereon, removing the old pump from in front of the store building on Lot 1, so that Lot 1 was then occupied by a store building and restaurant and Lot 2 by the gasoline service station. One end of the gasoline pump "island" is within 5 feet of the dividing line between the two lots and a portion of the underground gasoline tanks encroach several feet west of the dividing line and into Lot 1; two of the pipe caps for the filling of these tanks being thus located a few feet west of the said dividing line and on the surface of said Lot 1.

In 1950, defendants sold Lot 1 with the restaurant buildings on it to plaintiffs and retained Lot 2 with the service station. The result of this sale was and is that plaintiffs own a 105-foot frontage on the public highway and defendants own a 104-foot frontage on the public highway.

Until 1953, no trouble arose between these neighbors but in 1953 some irritation arose relating to the use for parking purposes of space unoccupied by buildings and alleged interference with driveway purposes. In 1954, plaintiffs had their lot surveyed and for the first time both parties became aware of the exact location of the true boundary line. In January, 1955, this action was filed to quiet title to Lot 1 as against any

claims of defendants for driveway purposes and maintenance of storage tanks and pipelines in and across a portion of the southeasterly corner of Lot 1. Defendants answered and affirmatively claim the right to use for driveway purposes and for storage tank and pipeline facilities a portion of said southeasterly corner of Lot 1.

From a judgment for plaintiffs quieting plaintiffs' title as to Lot 1 but allowing defendants the right to service, refill and use said gasoline storage tanks defendants appeal. On the theory of implied reservation of easement for a right of way, defendants complain that the trial court should have allowed a right of way for the use of defendants across the southeast portion of said Lot 1 for use by defendants and their customers in the operation of the service station business. This is based on the contention that normally the customers of the service station drove into and out of the area occupied by the gasoline pump island across the southeasterly portion of said Lot 1, and that this was routine custom at the time of and before the transfer of Lot 1 to these plaintiffs and fully known to plaintiffs.

The rule of implied easements referred to by defendants comes to us from the common law and has been recognized by the courts of California in many decisions. A portion of it came into the Civil Code as it now exists in 1872 in section 1104, and has never been altered. However, section 1104 by its terms is only for the benefit of grantees so that it has no force here. The common-law rule, as recognized in California, is expressed by the Supreme Court in the early case of *Cave* v. *Crafts*, 53 Cal. 135, 140:

"When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it. 'If the grantor has already treated this portion as a separate property, the mode in which he enjoyed it, or suffered it to be enjoyed, affords a very proper indication of what rights over his remaining land he intends to pass as accessory to it.' "

Various facets of the rule have been emphasized or restated in succeeding cases. Thus in *Cheda* v. *Bodkin*, 173 Cal. 7, 14 [158 P. 1025], the court gives a broader application as well as the basic purpose when it says:

" 'It is a direct recognition of the principle long established and fully recognized by this court (*Cave* v. *Crafts*, 53 Cal.

324

135; *Quinlan* v. *Noble*, 75 Cal. 250 [17 P. 69]), that principle being that "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains, . . ." '."

Further, on page 16: "The intention, in view of all the circumstances, is the cardinal subject for inquiry."

In *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8 [2] [215 P.2d 729], the court said: "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances."

Attendant upon and recognized as an appendage of the rule as it is applied in California, is "necessity for reasonable enjoyment." This question is one of fact to be decided by the trial court when all of the evidence is presented in the case.

"Where there is a better and more convenient means of ingress and egress to and from the land conveyed, and the easement is not necessary to the reasonable enjoyment of the part granted, no grant by implication arises. . . . 'The question as to whether or not the use was under a claim of right, or a mere matter of neighborly accommodation, was a question of fact to be determined by the court in the light of the relations of the parties, their conduct, the situation of the property and all of the surrounding circumstances.' " (*Grimmesey* v. *Kirtlan*, 93 Cal.App. 658, 664, 665 [270 P. 243].)

A further restatement of the rule of necessity appears in *Navarro* v. *Paulley*, 66 Cal.App.2d 827, 830 [153 P.2d 397], quoting from 28 Corpus Juris Secundum 692:

" '. . . the weight of authority sustains a rule less exacting than that of strict and indispensable necessity, namely, that the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. The test of necessity is whether the party claiming the right can, at reasonable cost, create a substitute on his own estate. It has been held that the rules as to ways of necessity should be applied.'

"In this case the trial court heard the testimony and considered the matter. In the performance of its duty the court determined against the defendant and appellant the essential fact of reasonable user at the time of the severance. With

that determination this court can have nothing to do, if there is substantial evidence to support it.''

Because of the rule that the words of a conveyance are to be construed more strictly against the grantor than against the grantee, the court will be more circumspect in its approach to decreeing an easement by reservation in favor of a grantor than it will for a grantee. It must also be remembered that easements by implication are not favored. (*Orr* v. *Kirk*, 100 Cal.App.2d 678, 681 [3] [2] [224 P.2d 71].)

Since the judge in this case, by stipulation of the parties, examined the premises his observation and view of the premises is evidence in the case. (*Owsley* v. *Hamner*, 36 Cal.2d 710, 719 [7] [227 P.2d 263, 24 A.L.R.2d 112] ; *Warfield* v. *Basich*, 161 Cal.App.2d 493 [326 P.2d 942].) This cause had been previously tried in full before a different judge, and judgment was likewise rendered in favor of plaintiffs at the close of that trial. Some of the defendants were absent in other parts of the world when that trial was had, and on a motion for new trial the same was granted.

The trial judge in this cause had before him a situation in which the highway frontage of Lot 2 is 104 feet immediately adjacent to the grounds of the defendants used for service station purposes while the frontage of plaintiffs is only 105 feet. He saw the premises, he weighed the testimony of the parties, his decision as to what was reasonably necessary cannot properly be interfered with by this court.

Respondents also claim that defendants are estopped from asserting an easement, and also raise the point that at the time defendants granted title to plaintiffs there could be no implied easement reserved because the State of California held a right of way for highway purposes over the portion of Lot 1 which is here involved. Because of the conclusions we have reached as to the trial court's decision on the merits of the controversy, we deem it unnecessary to pass on these latter points injected by respondents' brief.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.