[Civ. No. 9902. Third Dist. Mar. 27, 1961.]

MARTHA JEAN WILCOX et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Halpin, Halpin & Leep and Jack Halpin for Appellants.

Glenn D. Newton and William W. Coshow for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment entered upon a defense verdict in a wrongful death action. The deceased, Clayton Wilcox, was killed when he attempted to drive across respondent's mainline railroad track, which, in the area of the crossing, parallels the Anderson-Cottonwood Road in Shasta County. The site of the accident was the intersection of the railroad track, running north and south, and County Road E-11, running east and west. The deceased had driven north on the Anderson-Cottonwood Road to County Road E-11 where he turned to the right. He then traveled in an easterly direction on the latter road for a distance of approximately 86 feet to the railroad track which he proceeded to cross in the path of an oncoming freight train. Wilcox was driving 20 to 25 miles per hour; the train was running at 40. The intersection of the Anderson-Cottonwood Road with County Road E-11 is a T-intersection, that is, County Road E-11 coming into Anderson-Cottonwood from the east does not cross.

The major controversy in the instant case centers around the crossing signals. The signals involved, installed and maintained by the defendant company are blinker light signals. One set was located on the southwest corner of the intersection of the track and the county road and the other set was located on the northeast corner. The lights at the southwest corner were beamed in a general northwesterly direction; those on the northeast corner in a general westerly direction, but directed slightly south. It is the principal contention of appellants that these lights as installed and maintained did not comply with Public Utility Commission Safety Order designated as General Order 75-B. That order, so far as material here, reads as follows:

"Crossing signals shall, unless the Commission otherwise directs, be located in a conspicuous position at both corners of the crossing intersection on the right hand side of highway traffic flow and in advance of the railroad track and arranged to face the highway travel."

It appears that the blinker lights as installed and maintained did not literally comply with the order. Automobiles traveling north or south on Anderson-Cottonwood Road cannot be said to "approach" the intersection of the track with the county road until they turn onto that road and off Anderson-Cottonwood Road, or at least until they begin that maneuver. The fact that the road intersection is a T-intersection and that the distance from the railroad track to the

Anderson-Cottonwood Road is only about 80 feet does not eliminate the requirement of the order that the blinker lights shall be "located in a conspicuous position at both corners of the crossing intersection on the right hand side of highway traffic flow and in *advance* of the railroad track and arranged to face the highway travel." (Italics added.) The only highway travel with which we are concerned in this case is the travel along County Road E-11. ██ There was thus a technical violation of General Order 75-B in the manner in which these blinker lights were installed and maintained and the court should have given plaintiffs' requested instruction declaring that, as a matter of law, the lights as installed and maintained were in violation of the minimum requirements set up by General Order 75-B and that if this conduct on the part of the railroad company was a proximate cause of the accident plaintiffs were entitled to a verdict in their favor. It is clear from the evidence that the terms of General Order 75-B were ignored in the installation of the blinker lights at the crossing intersection. It is equally clear that they were located and directed as they were, because that was deemed to be the way in which, in that location, the best warning to the public could be given. ██ It was shown that the installation was the result of joint action by the railroad company, the county and the Public Utilities Commission, to the extent of the railroad paying half the cost of installation, the other two agencies dividing the other half. It was not shown that the commission had directed a variance from the requirement of the general order. The light at the southwest corner of the intersection was directed northwesterly so that when the driver of an automobile proceeding south on Anderson-Cottonwood, who intended to enter E-11, began his turn the blinker lights would be directed at him. The light on the northeast corner of the intersection across the track from Anderson-Cottonwood was directed southwesterly so as to confront a driver turning right onto the county road, as Wilcox did. But no lights to the right of such a driver were beamed west on the county road. A compliance with the general order would have required this and compliance was not made by directing a beam from the light located on the northeast corner to face a driver turning right from Anderson-Cottonwood.

We find no other error in the record. The jury were informed that the requirements of General Order 75-B were

minimum requirements and were instructed on the issue of general negligence.

The question remaining is whether or not the judgment should be reversed for procedural error. There was in this case no substantial conflict in the evidence.

Clyde Moore, a witness called by plaintiffs, had preceded Wilcox northerly on Anderson-Cottonwood Road toward the county road. He worked at a lumber yard across the track. When he turned right on the county road he saw the flashing lights as he started the turn. After he saw the lights, he slowed his car before he got to the track. He knew the train was coming. He saw it. The weather was clear. It was daylight and the train could be seen for a mile or more. There was nothing to hamper visibility. He concluded he could cross safely and did so. He went about 200 yards, looked back and saw the train hit the Wilcox car. He went back to the track, noted then that the bells were ringing and that the whistle on the train was blowing. He said: As you turn onto the county road, turning right, you head right toward the lights from across the track. You see them as you turn. You cannot turn faster than about 20 miles an hour. You have plenty of time to bring your car to a halt while still some distance from the track after making the turn. When I crossed, the train was about 400 yards away, going about 35 to 40 miles an hour. After the accident I wondered why Wilcox could not hear that train whistle. I could hear it from where I was and he was a lot closer to the train than I was.

A defense witness, Mr. Schumaker, who also works for the lumber yard, testified that he heard the train coming. He was on the east side of the track. He saw the red lights flashing before the accident and saw them flashing after it. He heard the bells ringing. Raymond Crowder, a defense witness, testified that he was approaching the intersection of Anderson-Cottonwood with the county road traveling south on Anderson-Cottonwood. He also works at the lumber yard. He intended to turn and cross the track. He saw the impact. Before the impact he saw the train coming. He saw the Wilcox car making the bend to turn in at a speed of 10 to 15 miles an hour and he saw Wilcox drive up on the track in front of the train as the train approached, without apparently speeding up or slowing down. The day was clear. The train was clearly visible. The lights on the train were shining. The train was whistling before the impact. It looked as though Wilcox was driving along and didn't know the train was coming. Ralph

Crowder, son of Raymond Crowder, was riding with Raymond and testified that the weather was good, the day was clear, it was after dawn. He first saw the train quite a distance away before the accident happened going 35 to 40 miles an hour. He saw the Wilcox car make its turn at 10 to 15 miles per hour as he came up on the approach to the track. He saw him drive in front of the train without apparently slowing down. The light on the front of the train was shining; the bells at the crossing were ringing.

It appears without dispute that Wilcox was thoroughly familiar with the situation at the crossing and with the signal lights as they were installed and maintained. He had worked at the lumber yard for several years and crossed the track every working day. There was no evidence that his sight or hearing was defective. We have three men watching him as he went upon the track and none of them testified to noting any apparent effort on his part to stop. On the contrary, all said he seemed to be oblivious of the approaching train. No negligence is charged against the railroad company save as to the lights.

 A judgment may not be reversed for procedural error unless from the whole record it can be said a different result would be improbable upon retrial. The question is a close one in this case. We think we could not say that if a jury found for plaintiff the implied holding that the failure to have lights as required was a proximate cause of the death of Wilcox could be set aside as unsupported; nor that if instructed, as they should have been, it is improbable such a verdict would have been returned.

The judgment appealed from is reversed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 26, 1961, and respondent's petition for a hearing by the Supreme Court was denied May 24, 1961.