[Sac. No. 7847. In Bank. Nov. 20, 1969.]

JOHN HOGUE, a Minor, etc., et al., Plaintiffs and Respondents, v. SOUTHERN PACIFIC COMPANY, Defendant and Appellant.

## Counsel

Carr & Kennedy, Daniel S. Frost and Glenn D. Newton for Defendant and Appellant.

Jack Halpin for Plaintiffs and Respondents.

## Opinion

**BURKE, J.**—In this wrongful death action defendant appeals from a judgment on a jury verdict[1] in favor of plaintiffs in the sum of $40,000.[2] As

---

[1]Defendant's purported appeal from the court's order denying motion for a new trial will be dismissed, as such order is not appealable. (Code Civ. Proc., § 904.3, formerly Code Civ. Proc., § 963; *Sawyer* v. *State Farm Fire & Cas. Co.* (1968) 69 Cal.2d 801, 811 [73 Cal.Rptr. 232, 447 P.2d 344]; *Callahan* v. *Gray* (1955) 44 Cal.2d 107, 109 [279 P.2d 963].)

[2]Plaintiffs are the four minor children of the deceased, Lonnie Hogue. His widow, having remarried, waived her claim against defendant.

hereinafter appears, we have concluded that contrary to defendant's contention, the evidence is sufficient to support the implied finding of negligence on its part, that contributory negligence by the deceased was not established as a matter of law, and that the judgment should be affirmed.

The deceased, Lonnie Hogue, met his death on an afternoon in January 1966 at a railroad right-of-way crossing in Shasta County when an automobile he was driving was struck by a Southern Pacific Company switch engine hauling a gondola car.

## 1. Negligence of Defendant.

At the scene of the accident Highway 99 is a four-lane divided highway, running north and south, with center turning lane. Parallel to and immediately east of the highway is a Southern Pacific main line track. A two-lane road crosses both at a right angle. The distance between the east line of Highway 99 and the railroad track was placed by various witnesses at from 39 feet to 53 feet.

There is no conflict in the following evidence: At approximately 3:35 p.m. defendant's switch engine and gondola were traveling south on the track paralleling Highway 99. When coming around a curve about 1,200 to 1,500 feet from the crossing the conductor, Reg Gritton, saw a 60 to 65-foot long truck and trailer loaded with lumber stacked 12 to 15 feet high crossing the track. As a precautionary measure the switch engine speed was reduced but after the truck had cleared the track the speed was resumed to approximately 60 miles per hour. Almost immediately thereafter Gritton, when at approximately 150 feet from the crossing, saw Hogue's vehicle traveling eastward approaching the crossing at approximately 10 miles per hour. When the engine was approximately 20 feet from the crossing, Hogue had crossed the fouling point of the road and the rail, at which time Gritton, realizing Hogue was not going to stop, called to the engineer to stop.

The whistle (2 long, 1 short, 1 long) was first blown at the whistle post approximately one-quarter mile from the crossing, and then blown once again just before the engine reached the crossing. The bell was ringing and the signal lights discussed below were flashing. The day was partly hazy with no visibility problems.

It was assumed that Hogue, who was familiar with the crossing and who was en route to work at a mill located easterly of the tracks, had been traveling south on Highway 99. He would normally pull into the left-turn area of the southbound lanes, turn left into the crossing, and then cross the track and continue to his place of employment. It was assumed that he stopped in the left-turn lane, and then turned into the crossing. His car was

midway across the track when struck. There was no evidence or indication that he took any action to avoid the accident. There was some evidence that Hogue had some ear problem but its extent was not shown.

On appeal plaintiffs concede that "the train was operated properly, the whistle blew, the bell rang, the signal lights flashed." However, in support of the jury's implied finding of negligence on the part of defendant, plaintiffs contend that the signal lights at the railroad crossing were inadequate, as a set of lights was not focused in a northwest direction so as to be visible to a southbound driver stopped in the left-turn lane on Highway 99. Defendant on the other hand argues that it sufficiently complied with Public Utilities Commission General Order No. 75B, which sets forth uniform standards for grade crossing protection, and that therefore it could not be held to be negligent.

General Order 75B requires, inter alia, that "Crossing signals shall . . . be located in a conspicuous position at both corners of the crossing intersection on the right-hand side of highway traffic flow and in advance of the railroad track and arranged to face the highway travel." General order 75B further specifies that the range of the signal lights be, on tangent, at least 300 feet.

It appears to be undisputed that there were figure-eight-type light signals located on the northeast corner and on the southwest corner of the tracks and the right-of-way crossing. In addition to the signal lights on both corners which were focused for the eastbound driver as he approached the tracks (as did Hogue), other sets of signal lights on the northeast corner were focused for drivers traveling west across the tracks; and on the southwest corner a set of signal lights was directed in a southerly direction for traffic northbound on Highway 99 and intending to turn right to cross the tracks. Defendant did not deem it feasible or desirable to have an additional set of signal lights on the southwest corner focused in a northwest direction for southbound traffic stopped in the turnout lane waiting to turn left and cross the Highway 99 northbound traffic, for as soon as the driver did turn left the two sets of signals focused west were clearly visible. However, there was evidence that because of the angle or position of a car stopped in the left-turn lane the driver at that point could not yet see the lights that were directed due west.

Indeed, testimony elicited from defendant's assistant signal supervisor and from its principal assistant signal engineer disclosed that the proximity of Highway 99 to the railway tracks "posed a problem"; that in addition to the difficulty Highway 99 southbound traffic waiting to turn left would have in seeing the lights that would warn of a train approaching the crossing from the north, the driver would have his attention focused on Highway 99

northbound traffic, which he would have to cross to reach the railway crossing, and also on traffic which might be approaching the crossing from the west or coming across it from the east, either of which would pass in front of him; that although the driver would complete a large part of his left turn before he would conflict with Highway 99 northbound traffic and by that time should be well within the range of the signal lights that would warn of an approaching train, he nevertheless would receive a warning of only 91 feet, whereas the warning is 300 feet for traffic approaching the crossing from any of four other possible routes. There was also evidence that if preceded by a truck and trailer, as occurred in this case, those vehicles would obscure the motorist's view of the only signals which would warn him of a train coming from the north (the signals at the southwest and the northeast corners of the tracks and the crossing) until the truck and trailer had passed the signals.

Additionally, the jury viewed the scene.

In light of the evidence that to a Highway 99 southbound motorist intending to turn left from the turn lane, the signal was visible at the most at only 91 feet, whereas General Order 75B required that the range of the light be, on tangent, 300 feet, the conclusion would appear warranted that defendant had not complied with order 75B. ■ However, even if there had been literal compliance with General Order 75B. " 'It is well settled that such statutory regulations constitute only the minimum measure of care required by the railroad, and it is usually a matter for the jury to determine whether something more than the minimum was required under the evidence in the case.' [Citation.] A railroad company is not necessarily free from negligence, even though it may have literally complied with safety statutes or rules. The circumstances may require it to do more. [Citation.]" (*Dragash* v. *Western Pac. R.R. Co.* (1958) 161 Cal.App.2d 233, 241 [326 P.2d 649]; see also *Peri* v. *Los Angeles Junction Ry. Co.* (1943) 22 Cal.2d 111, 126 [137 P.2d 441].)

■ Accordingly, in the present case it was a question of fact for the jury as to whether defendant was negligent in failing to provide an additional set of signals focused in a northwesterly direction for Highway 99 southbound traffic stopped in the left-turn lane. (*Peri* v. *Los Angeles Junction Ry. Co., supra,* 22 Cal.2d at pp. 120-122; *Wilkinson* v. *Southern Pac. Co.* (1964) 224 Cal.App.2d 478, 487-488 [36 Cal.Rptr. 689]; see also *Wilcox* v. *Southern Pac. Co.* (1961) 190 Cal.App.2d 548, 553 [12 Cal.Rptr. 207].) Since the evidence, including the jury's view of the scene (see Witkin, Cal. Evidence (2d ed. 1966) p. 607 and cases there cited; *Owsley* v. *Hamner* (1951) 36 Cal.2d 710, 719 [7] [227 P.2d 263, 24 A.L.R.2d 112]; *Jordan* v. *Henck* (1958) 166 Cal.App.2d 321, 325 [333 P.2d 117]),

was clearly sufficient to support the jury's implied finding of negligence on the part of defendant, that finding will not be disturbed on appeal.

### 2. *Contributory Negligence.*

■ The rule is that "Where the evidence on the issue of contributory negligence is conflicting, and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of the facts." (*Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33], and cases there cited.) ■ "[C]ontributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other . . . ." (*Anthony* v. *Hobbie* (1945) 25 Cal.2d 814, 818 [155 P.2d 826] and cases there cited.) ■ In this connection it may be noted that there is no longer a presumption that a person who dies as the result of an accident exercised due care for his own safety. Code of Civil Procedure section 1963, subdivision 4, which formerly provided such a presumption has been superseded by section 521 of the Evidence Code which provides that "The party claiming that a person did not exercise a requisite degree of care has the burden of proof on that issue." Accordingly, the sufficiency of the evidence to support the jury's implied finding that Hogue was not guilty of contributory negligence, an issue on which the trial court gave full instructions, must be determined without according to plaintiffs the benefit of a due care presumption.

■ In contending that the only reasonable conclusion to be drawn from the evidence is that Hogue was negligent in driving onto the railway track, defendant emphasizes that the day was clear, that it is undiputed that the train whistles and bell were sounded at least a quarter of a mile in advance of the crossing, and that the signal lights were concededly flashing.

However, as stated, there was evidence that Hogue had an ear problem, that his attention could have been diverted by opposing and cross traffic as he was turning left, and that the truck and trailer which preceded him would have obscured his view of the signal lights. The jury could also have reasonably believed that noise emanating from the operation and movement of the truck and trailer, either alone or in combination with other traffic noise at the Highway 99 intersection with the east-west county road, could have drowned out the sound of the train whistles and bell. Additionally, when viewing the scene the jury may well have observed physical characteristics of the intersection and the crossing not otherwise reflected in the record which influenced it in finding against the claim that Hogue was contributively negligent. Under all of the circumstances it cannot be said that that finding lacks support, or that the only rational hypothesis is that

contributory negligence exists. Cases cited by defendant differ factually and are not persuasive here. (*Aguilera* v. *Atchison, T. & S.F. Ry. Co.* (1961) 188 Cal.App.2d 274, 278-280 [10 Cal.Rptr. 367]; *Erwin* v. *Atchison, T. & S.F. Ry. Co.* (1955) 136 Cal.App.2d Supp. 925 [289 P.2d 311], *Dull* v. *Atchison, T. & S.F. Ry. Co.* (1938) 27 Cal.App.2d 473, 477-488 [81 P.2d 158].)

Defendant also complains of certain jury instructions, as well as of the admission of certain evidence, and of cross-examination permitted by the trial court. Our review of the record has disclosed no error prejudicial to defendant in the respects mentioned.

No other contentions merit discussion.

The judgment is affirmed, and the attempted appeal from order denying motion for new trial is dismissed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.