*914
 
 Opinion
 

 FRIEDMAN, J.
 

 This is an action for damages suffered in a railroad crossing accident. A jury trial resulted in a defense verdict and plaintiff appeals from the judgment. There was heavy evidence of plaintiff’s contributory negligence. The case was tried after the state Supreme Court’s decision in
 
 Li
 
 v.
 
 Yellow Cab Co.,
 
 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], which abolished contributory negligence as a bar to recovery and established a rule which assigns damage liability to the parties in proportion to the amount of negligence attributable to each. Plaintiff’s prime contention is that the railroad was negligent as a matter of law, thus that some apportioned award of damages was required.
 

 The accident occurred about 1:55 a.m., October 5, 1969, at the intersection of East and Main Streets in Woodland. Each street has four lanes of traffic plus a left-turn lane. Main Street, which runs east and west, is State Highway 16 and is the primary route to Sacramento, 19 milés to the east. East Street, which runs north and south, is State Highway 113. The intersection is the busiest in Woodland and was in the last stages of reconstruction by the state highway agency.
 

 Parallel to the west boundary of East Street and crossing Main Street are two pair of railroad tracks. Installed in the tracks are relay switches connected with traffic signals at the East and Main intersection and controlling two overhead wigwag automobile-warning signals. At a point 1,500 feet from the intersection, an approaching train would start the wigwags, and a “preemption” mechanism would change whichever traffic signals were green to yellow, then to flashing red. Across Main Street and west of the tracks are two white limit lines, behind which motorists must stop when the traffic lights are red. A stationary “buck” or railroad warning sign was also provided.
 

 On the night of the accident, Romo had been a guest at a wedding reception and dance. He had been drinking beer. Driving home with his wife, he stopped to buy a six-pack of beer and opened a can on the way. Soon after, he had an argument with his wife. He then dropped her off at their home and-continued to drive around.
 

 Just prior to the accident defendant’s freight train was approaching the intersection from the south at its normal speed of 40 miles per hour. The train’s headlight and oscillating light were on and the whistle or air horn
 
 *915
 
 was sounding. The traffic lights at the intersection were flashing red and (although there is some evidence to the contrary) the wigwag light was on and swinging back and forth over Main Street.
 

 Three witnesses saw the accident. Romo was traveling east on Main Street and in the far right lane at 35 miles per hour until he neared the railroad tracks and intersection, when he accelerated to 45 or 50 miles per hour and moved over to the left-turn lane. One witness testified that it appeared Romo was trying to “beat the train.” The brakeman at the left side of the locomotive cabin watched Romo approach and then yelled to the engineer to stop the train when he saw Romo was not going to stop. The engineer, on the right side of the train cabin, did not hear the yell because of the whistle but put the train into emergency stop when he saw the car “floating through the air” after it had been struck. The car was struck behind the right front door. The point of impact was on the westerly pair of tracks slightly south of the center of Main Street. Romo suffered severe and permanently disabling injuries.
 

 In preface to his charge of negligence as a matter of law, plaintiff points out that defendant’s conduct must be measured in isolation from plaintiff’s. We agree. “While a negligent plaintiff is no longer barred from recovery, but is entitled to recover damages diminished in proportion to the fault attributable to him
 
 (Li
 
 v.
 
 Yellow Cab Co.
 
 (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), the plaintiff may not recover without first establishing his case. A California plaintiff must still establish a prima facie case by proving that the defendant was negligent, and that that negligence was a proximate cause of his injuries, before there is anything against which his own negligence can be compared.”
 
 (Elder
 
 v.
 
 Pacific Tel. & Tel. Co.,
 
 66 Cal.App.3d 650, 657 [136 Cal.Rptr. 203].)
 

 Whether or not a defendant is guilty of negligence ordinarily is a mixed question of fact and law; the question may be determined as a matter of law only if reasonable persons following the law can draw but one conclusion from the evidence.
 
 (Gray
 
 v.
 
 Brinkerhoff,
 
 41 Cal.2d 180, 183 [258 P.2d 834];
 
 Putensen
 
 v.
 
 Clay Adams, Inc.
 
 12 Cal.App.3d 1062, 1077 [91 Cal.Rptr. 319].) Only where no fact is left in doubt and no deduction or inference other than negligence can be drawn by the jury from the evidence can the court say, as a matter of law, that negligence is established; even where the facts are undisputed, if reasonable minds may draw different conclusions upon the question of negligence, the question is one of fact for the jury.
 
 (Zibbell
 
 v.
 
 Southern Pacific Co.,
 
 160
 
 *916
 
 Cal. 237, 241 [116 P. 513].) Where negligence is a question of fact (for example, when two or more inferences can reasonably be drawn from the facts), the reviewing court is without power to substitute its deductions for those of the jury or trial court.
 
 (Callahan
 
 v.
 
 Gray,
 
 44 Cal.2d 107, 111 [279 P.2d 963].)
 

 The law imposes upon a railroad company and its train crewmen the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons traveling upon the public highway crossed by the company’s tracks and trains.
 
 (Peri
 
 v.
 
 L.A. Junction Ry., 22
 
 Cal.2d 111, 120-121 [137 P.2d 441].) Ordinarily the issue of the negligence in crossing cases, whether the railroad was negligent in the design and maintenance of the crossing or in the operation of the train, is one of fact as in other negligence cases.
 
 (Id.,
 
 at p. 120;
 
 Wilkinson
 
 v.
 
 Southern Pacific Co.,
 
 224 Cal.App.2d 478, 487-488 [36 Cal.Rptr. 689].) Whether a defendant is negligent in failing to provide automatic gates is a question of fact for the jury. (See
 
 Hogue
 
 v.
 
 Southern Pacific Co.,
 
 1 Cal.3d 253, 258 [81 Cal.Rptr. 765, 460 P.2d 965].) Also, it is for the jury to say whether the speed of a train was too high for a particular intersection. (See
 
 Herrera
 
 v.
 
 Southern Pacific Co.,
 
 155 Cal.App.2d 781, 788 [318 P.2d 784].)
 

 In the design and maintenance of the Woodland intersection Southern Pacific’s compliance with safety statutes and Public Utilities Commission orders did not necessarily immunize it from a finding of negligence. A railroad company is not necessarily free from negligence, even though it may have literally complied with safety statutes or rules; the circumstances may require it to do more.
 
 (Hogue
 
 v.
 
 Southern Pacific Co., supra,
 
 1 Cal.3d at p. 258.) If the peculiar characteristics of a crossing call for the installation of automatic protection—or the upgrading of existing automatic protection—the railroad may be guilty of negligence in failing to provide such protection.
 
 (Hinkle
 
 v.
 
 Southern Pacific Co.,
 
 12 Cal.2d 691, 701-702 [87 P.2d 349].)
 

 Plaintiff describes several factors which, he contends, should result in a finding of negligence as a matter of law. Essentially, he charges a relative lack of adequate safeguards at the crossing in combination with lack of precautions by the train crew. A major flaw in his argument is that it is based on a careful filtration of the evidence, emphasizing that which is unfavorable to the railroad and virtually excluding that which tends to support or vindicate the railroad’s conduct.
 

 
 *917
 
 An appellate determination that a defendant was negligent as a matter of law is analogous to an appellate finding that a defense verdict was not supported by substantial evidence, that is, the reviewing court must accept as true all evidence favorable to the prevailing party and reject that opposed to it.
 
 (Nestle
 
 v.
 
 City of Santa Monica,
 
 6 Cal.3d 920-925 [101 Cal.Rptr. 568, 496 P.2d 480];
 
 Herrera
 
 v.
 
 Southern Pacific Co., supra,
 
 155 Cal.App.2d at p. 783 [318 P.2d 784].) Thus a plaintiff charging a defendant with negligence as a matter of law pursues a mistaken tactic when he filters his evidentiary argument in an attempt to persuade the reviewing court that there was no conflict in the evidence or that only one inference was possible.
 

 Viewed comprehensively and objectively, the evidence falls far short of establishing the railroad’s negligence as a matter of law. The intersection of Main and East Streets was unique in that it was an intersection of two state highways in an urban area with a railroad running adjacent to one of the highways. This was a busy intersection, controlled by overhead traffic lights which were connected to and activated by the same electrical system which activated the railroad’s wigwag signal. In addition to the main track, there was a side track and a spur track. Although there was a limit line (consisting of a double white line painted on the street preceding the first pair of tracks), there was evidence that motorists were confused by the side tracks and were uncertain as to where to stop. For a motorist traveling easterly (as was plaintiff), the visibility of the tracks to the south was restricted; there was evidence that southward visibility was limited up to a point 25, 50, or 150 feet west of the main track. Nevertheless, all witnesses agreed that the flashing red traffic signal was in operation prior to the collision. The evidence provided some basis for an inference that the wigwag signal was not operating; two witnesses, however, testified that both the traffic signals and the wigwag were in operation. There was no question but that the traffic signals and wigwag were visible to an eastbound motorist approaching the tracks on Main Street. Thus, despite the limited visibility to the south, there was substantial evidence from which the jury could infer the existence of adequate warnings of an approaching train.
 

 Plaintiffs point to a history of prior accidents at this crossing, charging the railroad with a duty to monitor dangerous crossings. Certainly a jury may consider intersection monitoring as a care factor. (See
 
 Hinkle
 
 v.
 
 Southern Pacific Co., supra,
 
 12 Cal.2d 691.) The history of prior accidents at this crossing was not so compelling as to create an acute or undebatable need for installation of traffic gates prior to this particular
 
 *918
 
 accident. In March 1969 the Public Utilities Commission reported a daily average of 2,690 automobiles crossing these tracks. Despite this heavy use, only 12 train-vehicle accidents (exclusive of the present accident) had occurred at this crossing between 1938 and 1969. Of these accidents over a 30-year period, two had resulted in injuries and none in fatalities. Reasonable jurors could have different views as to the compelling necessity for action by Southern Pacific to install automatic gates.
 

 In fact, Southern Pacific did not have independent power to determine when and whether to install gates. Main Street was a state highway. The railroad could not unilaterally install different warning devices without the concurrence or approval of the state highway agency. As early as 1962 this intersection was included in the state’s plans to widen both Highway 16 and Highway 113. A representative of the state highway agency testified that even if Southern Pacific had volunteered to pay the full cost for the installation of automatic gates, the state would have withheld its approval. Additionally, there was evidence that before the state let its contract in 1969 to widen Main Street, the railroad in 1967 had inquired as to the contemplated date for widening the streets and had informed the state that if the improvements were to be deferred for any extended period of time, it had no objection to installing automatic gates on a 50-50 cost-sharing basis with the state.
 

 In March 1969 the state highway agency applied for Public Utilities Commission approval of automatic gate installation. This approval was granted. By the end of August 1969, the railroad had completed its share of the gate installation project. At the time of the Romo accident the installation remained incomplete because the state was unable to obtain the appropriate electric signal controller. Thus, even though there was a recognized need for upgrading the safeguards and for installing automatic gates prior to the present accident, it cannot be said that the railroad’s “delay” in the installation was negligence as a matter of law.
 

 Neither is the evidence of such character as to justify a holding that the operation of the train at the time and place of the accident was negligence as a matter of law. Plaintiff relies upon the fact that two days before the present accident, a southbound train (traveling at 15 miles per hour) struck a stalled, unoccupied vehicle at the same crossing. Until 1959 the Public Utilities Commission had fixed a speed limit on trains passing through Woodland of 12 miles per hour. In 1959, defendant received Public Utilities Commission approval to increase train speeds to 40 miles per hour. The train which struck plaintiff’s vehicle was traveling
 
 *919
 
 at the latter speed. Plaintiff also relies on evidence that the engineer had poor visibility to the left of the engine. According to the practices of the train crew, the engineer maintained a lookout from the right window of the locomotive cabin, while the conductor served as the “left eye.”
 

 In this case the conductor first saw plaintiff at a distance of 165 feet before the collision; he watched Romo approach the crossing, assuming that he was going to stop; not until Romo neared the crossing did the conductor realize that Romo was not going to stop; he called out to the engineer, but because the air horn was blowing, the engineer did not hear him and did not put the train into an emergency stop until after the collision. In view of Romo’s proximity and failure to stop, the accident could not have been avoided even had the engineer heard the brakeman and had applied the emergency brake prior to the impact. From the evidence as to the operation of the train and the conduct of the train crew at the time and place of the accident, we conclude that reasonable minds could differ as to whether or not defendant exercised reasonable care under the circumstances. Thus, the issue of negligence was one of fact and not of law.
 

 There is no merit to plaintiff’s charge of error in the trial court’s rejection of a requested jury instruction on willful misconduct. Viewed in the light most favorable to plaintiff, there was no substantial evidence to support an inference that Southern Pacific was aware of a probable (as opposed to possible) collision or that it was guilty of conscious failure to take action to avoid the peril.
 
 (Bains
 
 v.
 
 Western Pacific R.R. Co.,
 
 56 Cal.App.3d 902, 905 [128 Cal.Rptr. 778].)
 

 The same considerations which justified the trial court in rejecting the willful misconduct instruction also justified it in refusing to instruct on punitive damages. (See
 
 Simmons
 
 v.
 
 Southern Pac. Transportation Co.,
 
 62 Cal.App.3d 341, 368-369 [133 Cal.Rptr. 42]; cf.
 
 Seimon
 
 v.
 
 Southern Pac. Transportation Co.,
 
 67 Cal.App.3d 600, 606-609 [136 Cal.Rptr. 787].)
 

 Plaintiff charges that the trial court forced the jury into hurried deliberations. Although court and counsel had originally expected that the trial would be completed by Friday, August 15, the case was not presented to the jury until Friday morning, August 22. The court reluctantly permitted the trial to extend past August 15. Much of the time problem was attributable to plaintiff’s counsel, who had furnished an overly optimistic time estimate to the court and whose trial presentation was not completed until August 15. By August 22, several
 
 *920
 
 jurors had informed the court that a trial extending into the week of August 25 would interfere with their personal commitments. Apparently, the judge, too, had vacation plans. On Thursday, August 21, the judge told the jurors they would have only Friday the 22d to deliberate. After deliberating for approximately one hour, the jury returned with a verdict at 11:55 a.m.
 

 There are several reasons for rejecting this claim of error. First, plaintiff’s attorney bore primary responsibility for the time pressure. Second, in moving for a new trial, plaintiff’s affidavits failed to allege jury misconduct because of the time constraints; the fact that the jury returned with a verdict after one hour when they had an entire afternoon for additional deliberations justifies the belief that there was no misconduct. The trial court’s rejection of this same argument as a ground for new trial was well within the range of discretion, and this court will not interfere.
 

 Plaintiff charges unfairness because the judge refused to question the jury members as to their attitude toward plaintiff and plaintiff’s case. This occurred after a juror, Mrs. Robenalt, addressed a lengthy letter to the trial judge and orally informed the court that she felt she should be excused because she had become angry and biased against plaintiff’s attorney because of his courtroom conduct. When questioned, Mrs. Robenalt indicated that her opinion regarding the trial delays, a ploy on counsel’s part, was shared by the other jurors. At that point, plaintiff’s attorney requested that the court determine from the juiy whether or not a prejudice existed and whether the jury should continue to hear the case. The court declared that it would not question the jurors individually; rather, that it would admonish the jury that trial delays are to be expected and that they were not to blame either side for trial delays. At that point, counsel for plaintiff declared: “I would be satisfied if you would indicate that they should not make assumptions that the delays are occasioned by the plaintiff or the defendant because they may very well be mistaken in that assumption.” Mrs. Robenalt was excused and the trial proceeded on the basis of a stipulation that the case would be submitted to the panel of eleven jurors, nine votes being sufficient to return a verdict.
 

 Two reasons prompt rejection of plaintiff’s present claim of jury prejudice. One, the above-quoted statement of plaintiff’s attorney was an effective waiver of the objection plaintiff now raises. Two, the trial
 
 *921
 
 court’s handling of the problem raised by Mrs. Robenalt’s conduct was a thoroughly justified exercise of judicial discretion.
 

 Next, plaintiff charges error arising from the verdict forms submitted to the jury. These consisted of two general verdict forms and a form of special verdict with provision for findings on the proportionate fault of plaintiff and defendant. Plaintiff now contends that “the two general verdict forms diverted the jury’s attention away from its initial duty to only consider the Respondent’s conduct.”
 

 The contention has no merit. It is based on the inacceptable speculation that the jurors had no understanding of the court’s instructions. The instructions fully and fairly presented the comparative negligence rule and the necessity for apportioning damages if the jury found negligence on both sides. It is assumed that the jury understood the instructions and correctly applied them to the facts.
 
 (Solgaard
 
 v.
 
 Guy F. Atkinson Co.,
 
 6 Cal.3d 361, 371 [99 Cal.Rptr. 29, 491 P.2d 821].)
 

 The final issue arises from plaintiff’s attempt to prove that Southern Pacific had a policy of suppressing inculpatory information in its records of railroad crossing accidents. By means of discovery proceedings, plaintiff ascertained that in May 1968 Southern Pacific had established a “special committee” of its own personnel to reorganize this phase of its record keeping. The committee’s inquiries included destruction of various documents pursuant to a manual published by the Interstate Commerce Commission; the consolidation of records and files, and the elimination of correspondence files regarded as unnecessary. Most witnesses denied that the purpose of the special committee was to purge the files of documents which would create a risk to defendant upon discovery. The committee functioned for one or two years.
 

 In the belief that the files of the special committee might establish that its mission was to eliminate inculpatory documents, plaintiff sought through discovery either to inspect or to have these files produced. Southern Pacific asserted the attorney-client privilege as to these files. Following argument, the trial court reviewed the contents of the files
 
 in camera
 
 and ruled that they were protected by the attorney-client privilege. Two items were admitted into evidence however. These consisted of letters of instruction from Burton Howard, Southern Pacific claims superintendent, one issued in May 1968, the other in March 1969, pointing to the committee’s mission to eliminate “unnecessary” correspondence relating to the upgrading of crossing protection.
 

 
 *922
 
 The parties join in asking this court to indulge in an
 
 in camera
 
 examination and thereafter to determine if the contents were indeed privileged. We decline to indulge in the requested procedure. A claim of attorney-client privilege imposes on the party seeking disclosure the burden of establishing lack of confidentiality. (Evid. Code, § 917.) With certain exceptions not applicable here, the court may not require disclosure of the material in order to rule on the claim. (Evid. Code, § 915;
 
 Carlton
 
 v.
 
 Superior Court,
 
 261 Cal.App.2d 282, 292-293 [67 Cal.Rptr. 568].) Here, plaintiff has not sustained the burden of establishing lack of privilege. Plaintiff offered no evidence to disprove defendant’s claim of privilege; instead the evidence plaintiff offered was aimed at establishing as a fact that a policy of file destruction existed or to establish good cause for discovery. In either case, there is no evidence for this court to review to determine whether the files were privileged. Such an examination is not warranted by any procedure known to this court; further, as we view the matter, the proposed examination would violate Evidence Code section 915, subdivision (a).
 

 Moreover, we take a dim view concerning the relevance of the “special committee” files. According to his brief, plaintiff sought this material in support of his punitive damage claim. Even on the assumption—later rejected by the jury—that the railroad had been negligent in failing to install automatic crossing gates by the date of the Romo accident, its concealment activities would not convert its negligent conduct into malicious conduct.
 
 (Simmons
 
 v.
 
 Southern Pac. Transportation Co., supra,
 
 62 Cal.App.3d at pp. 368-369.)
 

 Judgment affirmed.
 

 Puglia, P. J., and Evans, J., concurred.